Filed 9/6/17 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| GABRIEL CORTEZ, <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> DOTY BROS. EQUIPMENT COMPANY, <br><br> Defendant and Respondent. | B275255 <br><br> (Los Angeles County Super. Ct. No. BC526795) <br><br>   ORDER MODIFYING OPINION (NO CHANGE IN JUDGMENT) |

THE COURT:

It is ordered that the opinion filed herein on August 15, 2017 be modified as follows:

Delete footnote 1, at pages 8 to 9, which will require renumbering of all subsequent footnotes.

There is no change in the judgment.

_____

PERLUSS, P. J.        ZELON, J.        SEGAL, J.

Filed 8/15/17; pub. order 9/1/17 (see end of opn.) (unmodified version)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| GABRIEL CORTEZ, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> DOTY BROS. EQUIPMENT COMPANY, <br><br> Defendant and Respondent. | B275255 <br><br> (Los Angeles County Super. Ct. No. BC526795) |

APPEAL from orders of the Superior Court of Los Angeles County, Jane L. Johnson, Judge. Appeal dismissed.

ORIGINAL PROCEEDING in mandate. Petition granted in part.

Kingsley & Kingsley, Eric B. Kingsley, Liane Katzenstein Ly, Kelsey M. Szamet and Ari J. Stiller; DesJardins & Panitz, Michael A. DesJardins and Eric A. Panitz for Plaintiff and Appellant.

Call & Jensen, John T. Egley, Joshua G. Simon and Delavan J. Dickson for Defendant and Respondent.

Gabriel Cortez sued his former employer Doty Bros. Equipment Company for Labor Code and wage and hour violations on behalf of himself and a putative class of employees and former employees. Cortez's complaint included a related representative claim under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.). On September 19, 2014 the superior court granted Doty Bros.' petition to compel arbitration of Cortez's individual claims pursuant to an arbitration provision in the collective bargaining agreement (CBA) governing his employment and severed and stayed his PAGA claim, which was not subject to arbitration. The court reserved questions concerning the arbitrability of the class claims for the arbitrator. On November 19, 2014 we summarily denied Cortez's petition for a writ of mandate challenging the court's order compelling arbitration.

Cortez and Doty Bros. then stipulated to allow the superior court, rather than the arbitrator, to determine the arbitrability of the class claims. On March 23, 2015, after substantial briefing and a hearing on this question, the court dismissed the class claims as unauthorized under the CBA. On April 1, 2015 Cortez filed a notice of appeal purporting to appeal from the March 23, 2015 order dismissing his class claims and the September 19, 2014 order compelling arbitration of his individual claims. Cortez argued in his appellate briefs that this court had jurisdiction to review both rulings under the death knell doctrine.

While Cortez's appeal was pending, the appellate courts in *Munoz v. Chipotle Mexican Grill, Inc.* (2015) 238 Cal.App.4th 291, 310 (*Munoz*) and *Miranda v. Anderson Enterprises, Inc.*

2

(2015) 241 Cal.App.4th 196, 201-202 (*Miranda*) held the death knell doctrine did not apply to the denial of class certification or dismissal of class claims while a plaintiff's PAGA claim remained pending in the trial court. Concerned about the viability of his initial appeal, Cortez voluntarily dismissed his PAGA claim with prejudice on March 30, 2016 and filed a second notice of appeal on May 20, 2016, again identifying the September 19, 2014 order compelling arbitration and the March 23, 2015 order dismissing all class claims as the orders subject to appellate review. We consolidated the two appeals.

Cortez contends this court has jurisdiction under the death knell doctrine to review the March 2015 dismissal of his class claims either because the outstanding PAGA claim did not defeat that order's appealability under the death knell doctrine or because he removed any bar to appellate jurisdiction when he dismissed his PAGA claim in March 2016 and filed a new notice of appeal. Cortez also contends the September 2014 order compelling arbitration is an interim order affecting the class's substantial rights and thus is reviewable on appeal from the order dismissing the class claims under Code of Civil Procedure section 906. Alternatively, he requests we treat his consolidated appeal as a petition for writ of mandate, revisit our summary denial of his prior writ petition and address the merits of both the court's order compelling arbitration of his individual claims and the dismissal of his class claims.

On the merits Cortez argues his statutory claims were not encompassed by the terms of the arbitration agreement in the CBA and, even if they were, the court erred in dismissing the class claims because the right to pursue collective action— including prosecution of a class action in an arbitral forum—is a

3

nonwaivable protected right under the National Labor Relations Act (NLRA) (29 U.S.C. § 151 et seq.).

Although not fully identified by the parties in their briefs, Cortez's appeal poses several difficult jurisdictional questions, in particular, the effect of Cortez's dismissal of his PAGA claim on the appealability of the earlier order dismissing the class claims, including whether a plaintiff's voluntary action can create an appealable order under the death knell doctrine and whether the second notice of appeal from an order entered more than a year before was timely; and the applicability of Code of Civil Procedure section 906 to an order made appealable under the judicially created death knell doctrine rather than pursuant to Code of Civil Procedure section 904.1. We resolve none of those issues. Rather, in light of the uncertainty of the appealability of the orders challenged by Cortez and the absence of any delay or prejudice our intervention at this stage would cause, we find this an appropriate case in which to exercise our discretion to treat the consolidated appeal as a petition for writ of mandate and reach the merits of the superior court's orders compelling arbitration of Cortez's individual claims and terminating the class claims.

We grant Cortez's petition in part, finding Cortez's cause of action under the Labor Code for Doty Bros.' failure to timely pay wages upon his separation from employment (Lab. Code, § 203) (sixth cause of action) and his unfair competition action based on that alleged statutory violation (Bus. & Prof. Code, § 17200) (seventh cause of action) are not encompassed by the arbitration provision in the CBA. In all other respects, we deny the petition, concluding the remaining causes of action are subject to

4

arbitration, and the court's termination of class claims proper on the ground the CBA does not authorize classwide arbitration.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The CBA Governing Cortez's Employment*

From September 2008 through May 2013 Cortez was a member of Teamsters Local Union No. 986 and worked at various times as a truck driver in the employ of Doty Bros. in its water division.  Doty Bros. belongs to an association of general contractors that entered into a CBA with the Teamsters on July 1, 2006 and a second CBA on July 1, 2010.  Both CBA's provided, "The parties to this Agreement recognize Industrial Wage Order 16-2001 covering On Site Construction, Mining, Drilling, and Logging Industries.  Any dispute or grievance arising from this Wage Order shall be processed under and in accordance with Article V, Procedure for Settlement of Grievances and disputes of this agreement."  Article V established an arbitration process overseen by a board made up of union and contractor representatives.

### 2. *Cortez's Individual Claims and Putative Class Action*

Cortez sued Doty Bros. on behalf of himself and all individuals "who hold or held the position of 'non-supervisory hourly employees in the following divisions:  water, underground, and oil' currently employed by or formerly employed by" Doty Bros. or its subsidiaries or affiliated companies.  In a first amended complaint Cortez alleged on behalf of himself and the putative class that Doty Bros. failed to comply with multiple provisions of the Labor Code governing overtime pay (Lab. Code, §§ 204, 510, 1194, 1198), meal periods (Lab. Code, §§ 226.7, 512) and rest breaks (Lab. Code, § 226.7) and requiring timely payments of wages due following termination of employment

5

(Lab. Code, §§ 201-203).  He also alleged that Doty Bros. violated the record keeping requirements in Labor Code sections 226, 1174 and 1174.5 and Industrial Welfare Commission (IWC) wage order No. 16-2001 (Wage Order 16).  Finally, Cortez alleged Doty Bros.' violations of those statutes and regulations constituted unfair competition (Bus. & Prof. Code, § 17200) and provided the basis for his representative action for civil penalties under PAGA.

### 3.  *Doty Bros' Petition To Compel Arbitration*

Doty Bros petitioned to compel arbitration of all Cortez's individual statutory claims and to dismiss the class claims and representative PAGA claim as unauthorized under the CBA. Cortez opposed the petition, arguing, among other things, the CBA did not contain a clear and unmistakable waiver of his right to litigate in a judicial forum his statutory claims under the Labor Code.  On September 19, 2014 the superior court granted Doty Bros' petition to compel arbitration of all but Cortez's PAGA cause of action, reasoning, as to the latter claim, the right to prosecute the PAGA action in a judicial forum was nonwaivable under the Supreme Court's decision in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348.  The court severed and stayed the PAGA claim and ordered the remainder of Cortez's individual and class claims to arbitration, leaving it to the arbitrator to decide whether the CBA authorized classwide arbitration.

The parties thereafter stipulated to have the court, not the arbitrator, determine the question whether the CBA authorized arbitration of class claims.  On March 23, 2015, following briefing and a hearing on this question, the court concluded the CBA did not contemplate arbitration of class claims.  The court rejected Cortez's argument that classwide arbitration was nonwaivable

6

under the NLRA, dismissed the class claims and directed all but the PAGA claim to be individually arbitrated. Cortez filed a notice of appeal. Later, as discussed, Cortez voluntarily dismissed his PAGA claim and filed a second notice of appeal, purporting to appeal from both the September 19, 2014 order compelling arbitration of his individual claims and the March 23, 2015 order dismissing his putative class claims.

## DISCUSSION

1. *Appealability*

a. *The March 23rd order dismissing class claims while the PAGA claim remained pending was not an appealable order*

The death knell doctrine, a judicially created exception to the one final judgment rule, treats an order that dismisses class claims while allowing individual claims to survive as an appealable order. (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 757 (*Baycol*) [under the "death knell doctrine," when an "order effectively [rings] the death knell for the class claims, [the court] treat[s] it as in essence a final judgment on those claims, which [is] appealable immediately"]; *Aleman v. Airtouch Cellular* (2012) 209 Cal.App.4th 556, 585 [same].) The doctrine is animated by two basic considerations: (1) The order terminating class claims is the practical equivalent of a final judgment for absent class members; and (2) without the possibility of a group recovery, the plaintiff will lack incentive to pursue claims to final judgment, thus allowing the order terminating class claims to evade review entirely. (*Baycol*, at p. 758.) To preserve appellate review of orders terminating class claims, the death knell doctrine permits appeal from an order that "amounts to a de facto final judgment for absent plaintiffs under circumstances

7

where . . . the persistence of viable but perhaps de minimis individual plaintiff claims creates a risk no *formal* final judgment will ever be entered." (*Id.* at p. 759*;* accord, *Coopers & Lybrand v. Livesay* (1978) 437 U.S. 463, 469-470 [98 S.Ct. 2454, 57 L.Ed.2d 351]; *Phillips v. Sprint PCS* (2012) 209 Cal.App.4th 758, 766.)

Significantly, the two fundamental underpinnings of the death knell doctrine are lacking when a plaintiff's representative PAGA claim remains pending in the trial court following the termination of the class claims. Despite dismissal of the class claims, the PAGA plaintiff remains incentivized by the statutory scheme to proceed to judgment on behalf of himself or herself as well as the individuals he or she represents. (See *Munoz, supra,* 238 Cal.App.4th at p. 311 ["[g]iven the potential for recovery of significant civil penalties if the PAGA claims are successful, as well as attorney fees and costs, plaintiffs have ample financial incentive to pursue the remaining representative claims under the PAGA and, thereafter, pursue their appeal from the trial court's order denying class certification"].) For this reason, every appellate court that has addressed this issue since *Munoz* (the first published appellate case to address the question) has similarly found the death knell doctrine inapplicable when a PAGA claim remains pending after the termination of class claims. (E.g., *Young v. RemX, Inc.* (2016) 2 Cal.App.5th 630, 635-636; *Nguyen v. Applied Medical Resources Corp.* (2016) 4 Cal.App.5th 232, 243 (*Nguyen*); *Munoz,* at p. 310; *Miranda, supra,* 241 Cal.App.4th at pp. 201-202.)[1]

---

[1] In *Bartoni v. American Medical Response West* (2017) 11 Cal.App.5th 1084, our colleagues in the First District, faced with the appellant's argument that *Munoz* was wrongly decided,

8

We find the analyses of these appellate courts persuasive and hold the death knell exception to the one final judgment rule does not apply when a PAGA claim remains pending in the trial court following termination of the class claims. Accordingly, the March 23, 2015 order was not appealable under the death knell doctrine.

b. *Questions exist as to the viability and scope of our appellate jurisdiction; we treat the appeal as a petition for writ of mandate*

Cortez contends he eliminated any bar to appellate jurisdiction when he voluntarily dismissed his PAGA claim on March 30, 2016 and filed a new notice of appeal on May 20, 2016 challenging both the termination of his putative class claims and the order compelling arbitration. It was at that point, he argues, that the death knell sounded, and the one-year-old March 23, 2015 order dismissing his class claims became appealable. (Doty Bros, for its part, agrees with this analysis concerning the appealability of the dismissal of the class claims.) Cortez also contends the September 2014 order compelling arbitration is reviewable on appeal from the order terminating class claims as an interim order affecting the class's substantial rights. (See Code Civ. Proc., § 906 ["[u]pon an appeal pursuant to Section 904.1 or 904.2, the reviewing court may review the verdict or decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party"].)

---

declined to reach the issue and elected to treat the appeal as a writ petition. (*Bartoni,* at p. 1095.)

The events underlying Cortez's two appeals raise several intriguing jurisdictional questions:  (1)  May a plaintiff unilaterally sound the death knell by voluntarily dismissing the representative action that serves as an obstacle to appealability under the death knell doctrine?  (2)  If so, under what time constraints must the plaintiff take such action to perfect a timely appeal from the order terminating the class claims?  That is, must the voluntary dismissal of the PAGA claim and filing of a notice of appeal occur within 60 days (or 180 days) of entry of the order terminating class claims for the appeal from the dismissal order to be timely (see Cal. Rules of Court, rule 8.104(a)(1) [notice of appeal must be filed on or before earliest of (A) 60 days after superior court clerk serves a notice of entry of judgment; (B) 60 days after a party serves a notice of entry of judgment; or (C) 180 days after entry of judgment]) or, as occurred here, is the filing of a new notice of appeal within 60 days after the plaintiff's voluntary dismissal of the PAGA claim sufficient?

The scope of our appellate jurisdiction under the death knell doctrine is also at issue.  The September 19, 2014 order compelling arbitration was not an appealable order.  (Code Civ. Proc., § 1294; *Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 648 [order compelling arbitration not appealable; may be reviewed only after entry of judgment confirming award]; *Muao v. Grosvenor Properties, Ltd.* (2002) 99 Cal.App.4th 1085-1089.)  Thus, even if appellate jurisdiction exists under the death knell doctrine, is the September 2014 order compelling arbitration subject to review?  Is it, as Cortez contends, appealable as an interim order affecting substantial rights after judgment pursuant to Code of Civil Procedure section 906 (cf. *Wallace v. GEICO General Ins. Co.* (2010)

10

183 Cal.App.4th 1390, 1396, fn. 5 [ruling that plaintiff lacked standing to serve as class representative reviewable on appeal from order striking class allegations]) or is section 906 inapplicable here, when the appeal from the termination of the class claims was premised not on Code of Civil Procedure sections 904.1 or 904.2, as section 906 by its terms requires, but pursuant to the judicially created death knell doctrine?

Each of these questions presents threshold jurisdictional issues; however, we need not resolve any of them here.  In light of the legal uncertainty surrounding the effect of Cortez's voluntary dismissal of the PAGA claim on the appealability under the death knell doctrine of the superior court's order terminating class claims and the parties' agreement the propriety of the termination of the class claims is properly before this court, as well as the lack of any prejudice or delay that would be caused by our intervention at this point, we exercise our discretion to treat the appeal from the termination of class claims as a petition for writ of mandate and consider the merits of the order dismissing the class claims and the prior order compelling arbitration of Cortez's individual claims.  (See *Olson v. Cory* (1983) 35 Cal.3d 390, 401; *Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1123; *Phillips v. Sprint PCS, supra,* 209 Cal.App.4th at p. 767; *H.D. Arnaiz, Ltd. v. County of San Joaquin* (2002) 96 Cal.App.4th 1357, 1366-1367.)

In exercising our discretion in this manner, we are mindful that reviewing an order compelling arbitration by writ should be done sparingly and only in an appropriate circumstance to avoid defeating the purpose of the arbitration statute.  (*Young v. RemX, Inc., supra,* 2 Cal.App.5th at p. 636 [""[t]he rationale behind the rule making an order compelling arbitration nonappealable is

11

that inasmuch as the order does not resolve all of the issues in controversy, to permit an appeal would delay and defeat the purposes of the arbitration statute"""]; *Zembsch v. Superior Court* (2006) 146 Cal.App.4th 153, 160 [same].) Indeed, we summarily denied the initial writ petition seeking review of the order compelling arbitration for just that reason. Now, however, when arbitration has already been significantly delayed and the issues fully briefed, review of that arbitration order, integral to a proper evaluation of the order terminating class claims, will not cause any additional delay or subvert the purpose of the arbitration statute. To the contrary, efficiency is gained, not lost, by treating the appeal from the dismissal of class claims as a writ petition and considering both orders at the same time. (See *Nelsen v. Legacy Partners Residential, supra,* 207 Cal.App.4th at p. 1123 [treating appeal from order compelling arbitration as writ petition]; *Phillips v. Sprint, supra,* 209 Cal.App.4th at p. 767; see also *Vasquez v. Superior Court* (2000) 80 Cal.App.4th 430, 434 (*Vasquez*) [deciding on merits petition for writ of mandate challenging order compelling arbitration based on arbitration provision in CBA].)

2. *The Order Compelling Arbitration*
a. *Governing law and standard of review*

A petition to compel arbitration should be granted if the court determines that an agreement to arbitrate the controversy exists. (Code Civ. Proc., § 1281.2.) Fundamental to this inquiry is whether the parties have agreed to arbitrate their dispute. (See *Am. Express Co. v. Italian Colors Rest.* (2013) 570 U.S. __ [133 S.Ct. 2304, 2306, 186 L.Ed.2d 417 [it is "overarching principle that arbitration is a matter of contract"]; *Mendez v. Mid-Wilshire Health Care Center* (2013) 220 Cal.App.4th 534, 541

(*Mendez*) [arbitration is a contractual matter; "'a party that has not agreed to arbitrate a controversy cannot be compelled to do so'"]; see also *Vasserman v. Henry Mayo Newhall Memorial Hospital* (2017) 8 Cal.App.5th 236, 244 (*Vasserman*) [same]; *Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 59 [same].)

A union representative may agree on an employee's behalf as part of the collective bargaining process to require the employee to arbitrate controversies relating to an interpretation or enforcement of a CBA. (*14 Penn Plaza LLC v. Pyett* (2009) 556 U.S. 247, 256-257 [129 S.Ct. 1456, 173 L.Ed.2d 398] (*Penn Plaza*) ["'arbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself'"]; *Wright v. Univ. Maritime Serv. Corp.* (1998) 525 U.S. 70, 79 [119 S.Ct. 391, 142 L.Ed.2d 361] (*Wright*).) In fact, when a CBA includes an arbitration provision, contractual matters under a CBA are presumed arbitrable; that is, arbitration must be granted as long as the CBA is reasonably susceptible to an interpretation in favor of arbitration. (*Wright, supra,* 525 U.S. at pp. 78-79.)

However, the presumption of arbitration in a CBA does not apply to statutory violations. (*Wright, supra,* 525 U.S. at pp. 78-79 [cases involving statutory claims "ultimately concern[] not the application or interpretation of any CBA, but the meaning of a . . . statute" and rights "distinct from any right conferred by" the CBA]; see *Penn Plaza, supra,* 556 U.S. at p. 258.) Thus, although a union representative in negotiating a CBA in good faith may waive the employee's right to pursue in a judicial forum an action for a statutorily protected right (see *Penn Plaza, supra,* 556 U.S. at p. 256 [the decision to fashion a CBA to

13

require arbitration of statutory claims is "no different from the many other decisions made by parties in designing grievance machinery"]), the United States Supreme Court has made clear that waiver of the right to prosecute a statutory violation in a judicial forum is only effective if it is explicit, "'clear and unmistakable.'" (*Id.* at p. 254; accord, *Wright,* at p. 80 [the right to prosecute statutory violations in a judicial forum "is of sufficient importance to be protected against [a] less-than-explicit union waiver" in a CBA]; *Mendez, supra,* 220 Cal.App.4th at p. 543.)[2]

---

[2]     Citing cases decided prior to *Penn Plaza, supra,* 556 U.S. 247, Cortez contends the rights guaranteed to him under the Labor Code are nonwaivable and cannot be negotiated away as part of the collective bargaining process. (See *Barrentine v. Arkansas-Best Freight System, Inc.* (1981) 450 U.S. 728, 740 [101 S.Ct. 1437, 67 L.Ed.2d 641] (*Barrentine*) [holding that union representative could not waive on employee's behalf employee's right to pursue in court wage and hour claims under the Fair Labor Standards Act]; *Zavala v. Scott Brothers Dairy, Inc.* (2006) 143 Cal.App.4th 585, 592-593 (*Zavala*) [citing *Barrentine* to support its holding that union representative could not waive employee's right to litigate in court wage and hour violation under Labor Code].)  In fact, as *Penn Plaza* recognized, there is no waiver of the substantive statutory right by requiring arbitration, only the right to seek relief from a court, rather than an arbitrator, in the first instance. (*Penn Plaza, supra,* 556 U.S. at p. 266.)  Moreover, although Cortez urges the *Penn Plaza* holding should be limited to antidiscrimination statutes and held not to apply to statutory claims under the Labor Code, nothing in *Penn Plaza* supports such a cramped interpretation.  To the contrary, in holding that statutory violations could be subject to arbitration if clearly and unmistakably bargained for in the CBA, the *Penn Plaza* Court distinguished the arbitration provision in

14

We apply de novo review to the trial court's interpretation of an arbitration agreement that does not involve conflicting extrinsic evidence. (*Vasserman, supra,* 8 Cal.App.5th at p. 244; *Mendez, supra,* 220 Cal.App.4th 541.)

b. *The CBA contained an explicit and unmistakable agreement to arbitrate Labor Code claims seeking to enforce Wage Order 16*

The CBA governing Cortez's employment provided that "[a]ny dispute or grievance arising from this Wage Order 16[] shall be processed under and in accordance with" the arbitration procedure outlined in Article V of the CBA. While recognizing that provision clearly and unmistakably requires arbitration of claims arising under the wage order, Cortez insists he brought his claims under the Labor Code, not the wage order.[3] Therefore, he asserts, his Labor Code claims are not subject to arbitration.

---

*Barrentine* on the ground it "did not expressly reference the statutory claim at issue" and was thus not sufficiently clear and explicit to support a waiver. (*Penn Plaza,* at p. 263.) Of course, the necessary implication of that holding is that a clear and explicit agreement to arbitrate wage and hour claims would be enforceable.

[3] As the Supreme Court explained several months ago, "The Legislature established the Industrial Welfare Commission (IWC) a century ago to regulate and protect the working conditions of women and minors. [Citation.] The IWC carried out that mission by adopting a series of wage orders, quasi-legislative enactments 'establishing minimum wages, maximum work hours, and conditions of labor.' [Citations.] As a result, 'wage and hour claims are today governed by two complementary and occasionally overlapping sources of authority: the provisions of the Labor Code, enacted by the Legislature, and a series of 18 wage orders, adopted by the IWC.'" (*Mendoza v. Nordstrom,*

Cortez's argument has some superficial appeal. The Labor Code is not mentioned in the CBA, and no extrinsic evidence was offered to explain that omission. Ordinarily, as we stated in *Mendez,* the failure to cite the statute at issue in the arbitration provision itself is fatal to any claim that the waiver of the right to enforce the statute in court is clear and explicit. (*Mendez, supra,* 220 Cal.App.4th at p. 546 [a broad arbitration clause and a contractual agreement to abide by all antidiscrimination laws is not a clear and explicit agreement to arbitrate statutory claims under the Fair Employment and Housing Act (FEHA); "[a]t a minimum, the [CBA] must specify the statutes for which claims of violation will be subject to arbitration"]; accord, *Vasquez, supra,* 80 Cal.App.4th at p. 436 [The CBA contains "a contractual commitment not to discriminate on the basis of national origin, but there is no express provision that the antidiscrimination commitment is subject to the grievance and arbitration provisions [of the CBA.] Nor are the ADA [Americans with Disabilities Act] and the FEHA explicitly incorporated in the CBA. Indeed, these statutes are not even mentioned."]; *Vasserman, supra,* 8 Cal.App.5th at p. 248 [same]; see *Ibarra v. UPS* (5th Cir. 2012) 695 F.3d 354, 359-360 ["for a waiver of an employee's right to a judicial forum for statutory discrimination claims to be clear and unmistakable, the [CBA] must, at the very least, identify the specific statutes the agreement purports to incorporate or include an arbitration clause that explicitly refers to statutory claims"].)

Nonetheless, as Cortez concedes, the agreement to arbitrate claims "arising under" Wage Order 16 is clear and

<hr />

*Inc.* (2017) 2 Cal.5th 1074, 1081.) Wage Order 16 covers "certain on-site occupations in the construction, drilling, mining, and logging industries." (See Cal. Code Regs., tit. 8, § 11160.)

16

unmistakable. Although the Labor Code is not specifically mentioned, we cannot disregard the reality that an employee may enforce the protections of the wage order in court only by bringing a claim under the Labor Code. (*Flowers v. Los Angeles County Metropolitan Transportation Authority* (2015) 243 Cal.App.4th 66, 74 (*Flowers*) [there is no private right of action to enforce wage order; employee must rely on Labor Code sections that require compliance with the wage order to enforce its terms]; *Thurman v. Bayshore Transit Management, Inc.* (2012) 203 Cal.App.4th 1112, 1132 [same].) As the Supreme Court observed in an analogous context, employers and employees become subject to the Labor Code requirements for minimum wage "only under the terms of an applicable wage order[;] and an employee who sues [under the Labor Code] to recover unpaid minimum wages actually and necessarily sues to enforce the wage order." (*Martinez v. Combs* (2010) 49 Cal.4th 35, 56; accord, *Flowers, supra,* 243 Cal.App.4th at p. 86.) To hold that wage and hour disputes arising under Wage Order 16 are arbitrable under the CBA only in theory, but not in practice because they are, by necessity, brought under the Labor Code, would result in the very absurdity courts are required to avoid. (See generally Civ. Code, § 1638 ["[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity"]; *Eucasia Schools Worldwide, Inc. v. DW August Co.* (2013) 218 Cal.App.4th 176, 182 [""[i]nterpretation of a contract 'must be fair and reasonable, not leading to absurd conclusions'"""].)

Cortez's causes of action for overtime pay, meal and rest break violations (first, second and third causes of action) seek to enforce the protections in Wage Order 16, which either mirror or

17

inform the Labor Code sections he cites to support his claims. (Compare Lab. Code, §§ 1194, 1198, 510 (overtime), 226.7 (meal and rest breaks) with Cal. Code Regs., tit. 8, § 11160, pars. 3 (overtime), 10 (meal periods), 11 (rest periods).)[4] Cortez's fourth and fifth causes of action, although purportedly based on Labor Code sections 226, 1174 and 1174.5, expressly refer to the requirements of Wage Order 16 and seek to enforce the reporting and record keeping provisions of the wage order.

Cortez's sixth cause of action for statutory penalties due for failure to pay wages in a timely manner following his separation or termination from employment (Lab. Code, §§ 202, 203) (sixth cause of action), in contrast, does not arise under Wage Order 16,

---

[4] Labor Code section 1194 provides, in part, "[A]ny employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover" the balance of the unpaid wage in a civil action. Labor Code section 1198 provides, in part, "The employment of any employee for longer hours than those fixed by the [applicable wage] order or under conditions of labor prohibited by the [wage] order is unlawful." And Labor Code section 510 identifies a minimum rate of overtime pay. The same protections are identified in the Wage Order 16. (See Cal. Code Regs., title 8, § 11160, par. 3A.)

Labor Code section 226.7 addresses meal and rest breaks. Subdivision (b) provides, "An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard or order of the [IWC]"; subdivision (c) authorizes recovery of one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided. Paragraphs 10 and 11 of Wage Order 16 reiterate and supplement those Labor Code provisions.

18

which makes no mention of payment upon the employee's separation from employment, much less statutory penalties for failure to do so. Coty Bros implicitly recognizes this omission in the wage order but insists that this claim is subject to arbitration because it involves a "wage-related issue." That interpretation of the CBA sweeps too broadly. The agreement requires arbitration of claims arising under the wage order. Cortez's sixth cause of action is based on a statute that is not informed by, referenced in, or even relevant to, the wage order disputes they clearly and unmistakably agreed to arbitrate.

Cortez's seventh cause of action for unfair competition is based on Doty Bros' purported violations of the Labor Code. (See Bus. & Prof. Code, § 17200 [unfair competition claim for unlawful business act or practice may be premised on violation of state or federal law]; *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 839 [same].) To the limited extent that cause of action is based on the nonarbitrable claim alleging violation of Labor Code sections 202 and 203, that claim, too, necessarily falls outside the agreement to arbitrate.

In sum, Cortez's claims under the Labor Code for overtime, meal and rest breaks and violation of record keeping provisions (his first through fifth causes of action) arise under Wage Order 16 and thus are within the CBA's provision compelling arbitration. However, his causes of action for timely payments upon separation of employment and his unfair competition claim based on that statutory violation (Cortez's sixth and seventh causes of action) do not fall within the wage order. The court erred in compelling arbitration of those claims.

19

### 3. *The CBA Does Not Contemplate Classwide Arbitration*

The question whether an arbitration agreement authorizes arbitration of class action claims is also a matter of contract interpretation. Absent language in the arbitration provision itself or extrinsic evidence establishing the parties' agreement to arbitrate classwide claims, only individual claims may be arbitrated. Silence on the issue may not be construed as agreement. (See *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.* (2010) 559 U.S. 662, 684-685 [130 S.Ct. 1758, 176 L.Ed.2d 605] (*Stolt-Nielsen*) [ "a party may not be compelled under the FAA [Federal Arbitration Act[5]] to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so"; agreement to authorize class-action arbitration may not be inferred solely from the fact of the parties' agreement to arbitrate]; *Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 243 [same].)

In resolving the question whether the parties agreed to class arbitration, state law principles of contract interpretation apply. (*Nelsen v. Legacy Partners Residential, Inc. supra,* 207 Cal.App.4th at p. 1128.) The fundamental rule of contract interpretation is to give effect to the mutual intent of the parties at the time they formed the contract. (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264; see Civ. Code, § 1636.) We are guided by the plain language of the agreement. (Civ. Code, § 1639.)

The instant CBA reveals no discernible intent to permit class arbitration. Throughout Article V's alternative dispute

---

[5] The parties agree the arbitration provision in the CBA is governed by the FAA.

20

provisions, the CBA refers to the grievance or dispute of an individual employee, not a group of employees: Paragraph 501 states, "An individual employee having a grievance or dispute shall first attempt to adjust said grievance or dispute with the Contractor or his representative." Paragraph 502 provides, "If the individual employee fails to effect a settlement of his grievance or dispute . . . [it] may be referred to the Teamster Craft Joint Adjustment Board established herein." Paragraphs 507, 512 and 514.1 and 5.14.5 similarly use the singular term "party" to refer to each side of a dispute.[6] Although paragraphs 507.1, 513 and 514.3 use the plural "parties,"[7] when viewed in

---

[6] Paragraph 507 provides, "All fees and expenses of the Chairman shall be borne by the party against whom the Chairman rules." Paragraph 512 provides, "It is understood and agreed that the procedures outlined in this grievance procedure shall be the exclusive remedy for any violation of this Agreement, provided the foregoing shall not deprive either party from obtaining any injunctive relief from the courts to which he is otherwise entitled." Paragraph 5.14.1 also refers to "either party" in discussing the hiring of lawyers to assist in the arbitration. Paragraph 514.5 identifies the parties on both sides of the dispute as the "charging party" and the "charged party."

[7] Paragraph 507.1 provides, "If there is any question as to which is the losing party, or if a case is referred back to the parties without decision . . . the Chairman is authorized and requested to determine who shall pay the fees and may in such case order a sharing of such fees." Paragraph 513 states, "The determination of the Teamster Craft Joint Adjustment Board are final and binding upon the parties. There shall be NO APPEAL." Paragraph 514.3.1 provides, "Once a grievance is placed on the agenda it shall be heard unless postponed by mutual consent of both parties."

context, the use of the plural in those paragraphs refers to the two sides of the controversy, not multiple parties on the same side of a grievance. (*Foster-Gardner, Inc. v. National Union Fire Ins. Co.* (1998) 18 Cal.4th 857, 868 [""language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case""]; *Bank of the West v. Superior Court, supra,* 2 Cal.4th at p. 1264 [same].)

Cortez does not dispute this interpretation of the CBA or otherwise challenge the trial court's determination that the language of the CBA does not contemplate classwide arbitration. Rather, he argues that any employer-employee contract that prohibits classwide arbitration violates the protections for collective action afforded employees under sections 7 and 8 of the NLRA and is therefore invalid.[8]

There is currently a conflict among the United States Courts of Appeals as to the merit of Cortez's position. The Ninth and Seventh Circuits have held that waivers of classwide

---

[8] Section 7 of the NLRA states that "[e]mployees shall have the right to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all such activities except to the extent that such right may be affected by an agreement requirement membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title." (29 U.S.C. § 157.)

Section 8(a)(1) of the NLRA states it is an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in" section 7. (29 U.S.C. § 158(a)(1).)

22

arbitration are antithetical to the NLRA's protection of collective activity (see *Morris v. Ernst & Young, LLP* (9th Cir. 2016) 834 F.3d 975, 983; *Lewis v. Epic Sys. Corp.* (7th Cir. 2016) 823 F.3d 1147, 1155) while other circuit courts have rejected that position and found such waivers of class actions enforceable.  (See, e.g., *Murphy Oil USA, Inc. v. NLRB* (5th Cir. 2015) 808 F.3d 1013, 1018; *Sutherland v. Ernst & Young LLP* (2d Cir. 2013) 726 F.3d 290, 297; *Owen v. Bristol Care, Inc.* (8th Cir. 2013) 702 F.3d 1050, 1052.)  The United States Supreme Court recently granted certiorari in these cases to resolve the issue.  (See, e.g., *Morris,* at p. 983; cert. granted *sub non. Ernst & Young, LLP v. Morris* (2017) __ U.S. __ [137 S.Ct. 809, 196 L.Ed.2d 595].)

Cortez urges us to defer ruling on this question until the United States Supreme Court decides this issue.  Further delay is unnecessary.  The California Supreme Court has rejected Cortez's argument.  (See *Iskanian v. CLS Transportation, LLC Los Angeles, supra,* 59 Cal.4th at pp. 375-376 ["the NLRA's general protection of concerted activity, which makes no reference to class actions," does not bar parties to a CBA from excluding class claims from the agreement to arbitrate].)  So must we.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

## DISPOSITION

The appeal is dismissed. Deeming the appeal a petition for writ of mandate, the petition is granted in part. The superior court is directed to vacate its September 19, 2014 order compelling arbitration of Cortez's individual claims and to enter a new order compelling arbitration of the first through fifth causes of action and denying the petition to compel arbitration of the sixth and seventh causes of action. The order of proceedings is subject to the superior court's discretion under Code of Civil Procedure section 1281.2, subdivision (c). In all other respects the petition is denied. Each party is to bear his and its own costs in connection with this proceeding.

PERLUSS, P. J.

We concur:

ZELON, J.

SEGAL, J.

24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| GABRIEL CORTEZ, | B275255 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC526795) |
| v. | |
| DOTY BROS. EQUIPMENT COMPANY, | ORDER CERTYFING OPINION FOR PUBLICATION (NO CHANGE IN JUDGMENT) |
| Defendant and Respondent. | |

THE COURT:

The opinion in this case filed August 15, 2017 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), a non-party's request pursuant to California Rules of Court, rule 8.1120(a) for publication is granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

_____

PERLUSS, P. J.          ZELON, J.          SEGAL, J.