Filed 12/9/21  Tovar v. Windsor Convalescent and Rehab. Center etc. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| REINA TOVAR,<br><br>     Plaintiff and Appellant,<br><br>          v.<br><br>WINDSOR CONVALESCENT AND REHABILITATION CENTER OF SALINAS, LLC, et al.,<br><br>     Defendants and Respondents. | G060386<br><br>(Super. Ct. No. 19CV000354)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Monterey County, Lydia Villarreal, Judge.  Dismissed.

Fitzpatrick & Swanston, Charles Swanston, B. James Fitzpatrick, and Laura L. Franklin; Diversity Law Group, Larry W. Lee, Kristen M. Agnew, Nicholas Rosenthal, and Mai Tulyathan, for Plaintiff and Appellant.

Miller Barondess, Brian A. Procel and Jeffrey B. White, for Defendants and Respondents.

Reina Tovar brought a putative class action alleging wage and hour violations by her former employer Windsor Convalescent and Rehabilitation Center of Salinas, LLC and its affiliated entities (Windsor). Her complaint also contained a representative claim for Labor Code violations under the Private Attorney General Act of 2004 (Lab. Code, § 2698 et seq.) (PAGA claim). Based on an arbitration agreement Tovar signed at the beginning of her employment with Windsor, the trial court issued a prejudgment order compelling arbitration of Tovar's individual claims, striking her class claims, and severing and staying her PAGA claim pending arbitration of her individual claims. The court also severed and struck a provision in the agreement that gave the arbitrator's findings preclusive effect on the PAGA claim. Tovar appeals from the order.

Tovar contends the "court erred in allowing any part of the arbitration agreement to be enforced because the agreement's illegal and overreaching objectives – to prevent employees from bringing PAGA claims and to the extent any PAGA claims are brought, to have those claims decided by an arbitrator – taint the entire agreement with unconscionability." (Boldface & italics omitted.) She asserts the court's severance of the two objectionable provisions was not authorized by the arbitration agreement and enforcing any part of the agreement "condones [Windsor's] bad faith scheme and encourages other employers to overreach by including deliberately illegal clauses."

Tovar acknowledges an order compelling arbitration is not appealable, but she asserts the death knell exception applies here. We disagree. Because a representative PAGA claim remains pending, the trial court's order was not appealable under the death knell doctrine. We decline Tovar's request to treat her appeal as a petition for writ of mandate as the circumstances do not warrant such treatment. Accordingly, we dismiss the appeal from a nonappealable order. We nonetheless caution Windsor and other employers that an ongoing failure to comply with *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 384 (*Iskanian*) may in the future render an employment arbitration agreement unenforceable.

2

FACTS

I. *Trovar's Employment*

In January 2018, Tovar was hired as a registered nurse by Windsor, a skilled nursing facility that offers short-term, long-term, and rehabilitative health services. Included within her new-hire packet were two documents concerning the company's arbitration policy: (1) Windsor's "Alternative Dispute Resolution Policy" (the Policy), and (2) Windsor's "Agreement to be Bound by Alternative Dispute Resolution Policy" (capitalization omitted) (the Agreement). Tovar signed the Agreement because she was told the documents in her new-hire packet were required for her employment.[1] Tovar left her employment with Windsor in August 2018.

II. *The Arbitration Agreement*

Newly hired employees at Windsor were given a copy of the Policy, a three-page document. This document explained the Policy was "mandatory for all disputes arising between employees, on the one hand, and Windsor Convalescent and Rehabilitation Center of Salinas, LLC . . . , on the other hand[ ]" (capitalization omitted) and covered any employment-related disputes, including wage and hour claims. It also addressed the alternative dispute resolution procedure—how the process is initiated, how an arbitrator is selected, the arbitrator's authority, and how fees and costs are allocated. The Policy indicated an employee could opt out by completing a form and returning it to Windsor's "Payroll Coordinator" within 30 days and an employee would "not be retaliated against or subject to any adverse employment action" if her or she opted out of the Policy.

---

[1] In the trial court, Windsor disputed Tovar's statement she was required to sign the Agreement, and Windsor submitted a declaration by its director of staff development stating new hires were not required to sign the Agreement as a condition of employment. The trial court made no explicit findings concerning this contested fact.

3

The Policy described disputes covered by or excluded from its provisions. A clause in the Policy specified if a lawsuit was filed containing claims covered by the Policy and non-arbitrable claims, the court would stay litigation of the non-arbitrable claims pending arbitration of the covered claims. This clause further stated, "In that event, the arbitrator's decision as to the claims that are subject to arbitration, including any determinations as to disputed factual or legal issues, will be entitled to full force and effect, and be binding, in any later court proceedings related to claims that are not subject to arbitration."

The Policy also contained a "class action waiver" (capitalization omitted) that stated, "I understand and agree this ADR [Alternative Dispute Resolution] Program prohibits me from joining or participating in a class action or representative action, *acting as a private attorney general or representative of others, or otherwise consolidating a covered claim with the claim of others*." (Italics added.) A severability clause near the end of the Policy provided, "In the event that any provision of this ADR Policy is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable to any extent, such term or provision shall be enforced to the extent permissible under the law and all remaining terms and provisions of this ADR Policy shall continue in full force and effect."

The Agreement, a two-page document, began with the statement, "I agree that in the event employment disputes arise between Windsor . . . (herein collectively referred to as the 'Company'), on the one hand, and me, on the other hand, I will be bound by the Company Alternative Dispute Resolution Policy . . . , which provides for final and binding arbitration." The Agreement reiterated the Policy applied to all employment related disputes, including wage and hour claims. The class action waiver from the Policy was repeated twice in the Agreement, once in all caps. Other terms from the Policy were repeated in the Agreement, including the stay provision and the clause

4

providing the arbitrator's "determinations as to disputed factual or legal issues" would be binding in later court proceedings on non-arbitrable claims.

Inconsistent with Windsor's assertion the Agreement was voluntary and not required as a condition of employment, the Agreement stated, "In consideration for and as a material condition of employment with Windsor" the Policy "is the exclusive means for resolving covered disputes; no other action may be brought in court or in any other forum." (Capitalization omitted.) Tovar signed the Agreement below an acknowledgment she had been provided a copy of the Policy and the American Arbitration Association Employment Arbitration Rules and Mediation Procedures.

III. *Trovar's Lawsuit*

In January 2019, Tovar filed a lawsuit on behalf of herself and other similarly situated current and former employees of Windsor, alleging eight causes of action for Labor Code violations: (1) failure to provide meal periods or compensation in lieu thereof; (2) failure to provide rest periods; (3) failure to pay hourly and overtime wages; (4) failure to pay minimum wage; (5) failure to comply with itemized employee wage statement requirements; (6) failure and refusal to pay agreed wages; (7) failure to pay all wages upon termination; and (8) failure to timely pay wages. In the ninth cause of action, Tovar brought a claim in a representative capacity under the PAGA, seeking compensatory damages, statutory penalties, civil penalties, and reasonable attorney fees and costs for the alleged Labor Code violations. The tenth cause of action alleged individual and putative class claims for violations of Business and Professions Code sections prohibiting unfair competition.

Tovar refused Windsor's request to stipulate to the dismissal of her class action allegations and to submit her individual claims to arbitration in conformance with the Agreement.

IV. *Motion to Compel Arbitration, Opposition, and Reply*

Windsor moved for an order compelling arbitration of Tovar's individual claims, dismissal of her class action allegations, and stay of her PAGA claim pending arbitration of her individual claims. Windsor conceded the PAGA claim could not be compelled to arbitration and asserted the PAGA waiver provision should be severed from the Agreement. Windsor argued the Agreement's remaining terms should be enforced and under those terms, the PAGA claim should be stayed and the arbitrator's findings of fact and law would be binding on the trial court in the later proceedings on the PAGA claim. Windsor further asserted the Agreement was not unconscionable, but if one of its provisions was found unconscionable, the provision should be severed and the rest of the Agreement enforced.

In opposition, Tovar contended the Agreement was unconscionable and therefore unenforceable. Tovar asserted the Agreement was procedurally unconscionable because it was "a one-sided adhesive arbitration agreement." She argued it was substantively unconscionable because its terms ostensibly required her to waive any PAGA claims. Tovar spotlighted that four years prior to Windsor presenting the Agreement to her to sign, the California Supreme Court had held "where . . . an employment agreement compels the waiver of representative claims under the PAGA, it is contrary to public policy and unenforceable as a matter of state law." (*Iskanian, supra*, 59 Cal.4th at p. 384.) She argued that after the Supreme Court's *Iskanian* decision in 2014, Windsor knew the PAGA waiver provision was an illegal term and included it nonetheless, rendering the entire Agreement unconscionable.

Tovar asserted the substantive unconscionability of the Agreement was compounded by the provision giving the arbitrator's decisions preclusive effect on the PAGA claim. Tovar contended this provision was "a backdoor attempt to get around the *Iskanian* rule prohibiting arbitrations of PAGA claims[,]" and if this provision was enforced, it "would accomplish the very result that the California Supreme Court

6

denounced in *Iskanian*." Arguing the Agreement was "permeated with unconscionability" and Windsor acted in bad faith, Tovar asserted severance was an inappropriate remedy and the court should refuse to enforce the Agreement.

In its reply, Windsor denied the Agreement was either procedurally or substantively unconscionable. As to procedural unconscionability, Windsor argued there was no oppression because Tovar was not required to sign the Agreement and she could have opted out within 30 days of signing but failed to do so. Windsor asserted Tovar had not demonstrated substantive unconscionability and the Agreement did not shock the conscience. Windsor maintained the court should enforce the Agreement, including the provision the arbitrator's findings would be binding on the PAGA claim.

V. *Trial Court's Ruling*

The trial court severed the PAGA waiver provision from the Agreement and severed and struck the provision giving the arbitrator's decisions preclusive effect as to the PAGA claim. The court granted Windsor's motion to compel arbitration of Tovar's non-PAGA claims, stuck the class action allegations, and stayed the PAGA claim pending arbitration.

DISCUSSION

I. *Appealability*

The first issue we must consider is whether the trial court's order is appealable. Generally, orders compelling arbitration are considered interlocutory and are not immediately appealable. (Code of Civ. Proc., § 1294; *Nguyen v. Applied Medical Resources Corp.* (2016) 4 Cal.App.5th 232, 242 (*Nguyen*).) Tovar contends the court's order is appealable under the death knell doctrine, "a judicially created exception to the one final judgment rule, [which] treats an order that dismisses class claims while allowing individual claims to survive as an appealable order." (*Cortez v. Doty Bros. Equipment Co.* (2017) 15 Cal.App.5th 1, 8 (*Cortez*).) We conclude the death knell doctrine does not apply because of the remaining representative PAGA claim.

7

Under the death knell doctrine, an order is immediately appealable "when 'it effectively terminates the entire action as to [a] class, in legal effect being "tantamount to a dismissal of the action as to all members of the class other than plaintiff."' [Citations.]" (*Williams v. Impax Laboratories, Inc.* (2019) 41 Cal.App.5th 1060, 1066 (*Williams*).) In *Munoz v. Chipotle Mexican Grill, Inc.* (2015) 238 Cal.App.4th 291 (*Munoz*), the court explained the reasoning behind the death knell doctrine: "The rationale of permitting appeal of what would otherwise be an intermediate order is that absent immediate review, the plaintiff would have no financial incentive to pursue his or her case to final judgment just to preserve the ability to appeal the denial of the plaintiff's class certification motion. [Citation.]" (*Id.* at p. 308.) But "orders that only limit the scope of a class or the number of claims available to it are not similarly tantamount to dismissal and do not qualify for immediate appeal under the death knell doctrine; only an order that entirely terminates class claims is appealable. [Citations.]" (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 757-758 (*Baycol*).)

"To qualify as appealable under the death knell doctrine, an order must '(1) amount[ ] to a de facto final judgment for absent plaintiffs, under circumstances where (2) the persistence of viable but perhaps de minimis individual plaintiff claims creates a risk no *formal* final judgment will ever be entered.' [Citation.]" (*Williams, supra*, 41 Cal.App.5th at p. 1067.) "Significantly, the two fundamental underpinnings of the death knell doctrine are lacking when a plaintiff's representative PAGA claim remains pending in the trial court following the termination of the class claims." (*Cortez, supra*, 15 Cal.App.5th at p. 8.) This is because a PAGA claim is a representative action, in which "'an "aggrieved employee" may bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations.' [Citation.]" (*Iskanian, supra*, 59 Cal.4th at p. 380.) Thus, where a PAGA claim remains after the termination of class claims, the legal effect is not that of a final judgment for the represented members and the death knell doctrine does not apply. In fact, "every

8

appellate court that has addressed this issue . . . has similarly found the death knell doctrine inapplicable when a PAGA claim remains pending after the termination of class claims. [Citations.]" (*Cortez, supra*, 15 Cal.App.5th at pp. 8-9.)

We reached this conclusion in *Nguyen, supra*, 4 Cal.App.5th 232. There, as here, plaintiff appealed after the trial court struck his class claims, stayed the PAGA claim, and ordered him to arbitrate his individual claims. (*Id.* at p. 242.) We rejected plaintiff's contention the trial court's order was reviewable under the death knell doctrine, explaining: "'Although the only class claim has been dismissed, the representative PAGA claim remains and plaintiff does not contend there are any putative class members who are not also aggrieved employees for purposes of the PAGA claim. Accordingly, the order does not appear to constitute a de facto final judgment for absent plaintiffs—the putative class members/aggrieved employees under PAGA—because their PAGA claims remain pending.' [Citation.]" (*Id.* at p. 243.)

Here, however, Tovar does contend there are "putative class members who are not PAGA aggrieved employees" because they were employed by Windsor within the four-year statute of limitations for the class claims but were not employed within the one-year statute of limitation for the PAGA claim. She asserts as to these "absent class members[]" the trial court's order constitutes a de facto judgment and the death knell doctrine should apply. Tovar's argument overlooks a crucial requirement of the death knell doctrine—"'only an order that *entirely terminates* class claims is appealable.' [Citation.]" (*Nguyen, supra*, 4 Cal.App.5th at p. 243.) "[O]rders that only limit the scope of a class or the number of claims available to it are not . . . tantamount to dismissal and do not qualify for immediate appeal under the death knell doctrine[.]" (*Baycol, supra*, 51 Cal.4th at pp. 757-758.)

Perfect overlap between each member of the putative class and the PAGA representative action is not necessary. Even if there are former employees who would qualify as class members for some claims in the complaint but not aggrieved employees

9

for the PAGA claim, the death knell doctrine is not applicable. The reason why is the representative PAGA claim remains, even if the number of represented employees is reduced. Thus, the first requirement for the death knell doctrine is not satisfied because the trial court's order does not "amount[] to a de facto final judgment for absent plaintiffs" (*Baycol, supra*, 51 Cal.4th at p. 759) as there is a remaining representative PAGA claim (*Young v. RemX, Inc.* (2016) 2 Cal.App.5th 630, 635).

Nor has Tovar shown the death knell doctrine's second requirement is satisfied here. This requirement is established when there is "a risk no *formal* final judgment will ever be entered" because only "de minimis individual plaintiff claims" remain. (*Baycol, supra*, 51 Cal.4th at p. 759.) Where a PAGA claim remains after the dismissal of a class claim, "the PAGA plaintiff remains incentivized by the statutory scheme to proceed to judgment on behalf of himself or herself as well as the individuals he or she represents. [Citation.]" (*Cortez, supra*, 15 Cal.App.5th at p. 8.) Under PAGA, the Legislature has "provided two financial incentives for aggrieved employees to pursue" a claim. (*Provost v. YourMechanic, Inc.* (2020) 55 Cal.App.5th 982, 991.) First, an employee can "seek any civil penalties the state can, including penalties for violations involving employees other than the PAGA litigant herself." (*ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 185 (*ZB*).)[2] "Generally speaking, the civil penalties available under the PAGA are $100 'for each aggrieved employee per pay period for the initial violation and [$200] for each aggrieved employee per pay period for each subsequent violation.' [Citation.]" (*Munoz, supra*, 238 Cal.App.4th at pp. 310-311.) Although 75 percent of the civil penalties recovered under the PAGA must be distributed to the "Labor and Workforce Development Agency for enforcement of labor laws," the remaining 25 percent goes to the "aggrieved employees." (Lab. Code, § 2699, subd. (i).) Second, a prevailing PAGA plaintiff is entitled to attorney fees and costs. (*Id.*, subd. (g)(1).)

---

[2] A PAGA plaintiff, however, is not able to collect unpaid wages under Labor Code section 558. (*ZB, supra*, 8 Cal.5th at p. 188.)

Tovar asserts she might lack incentive to proceed to judgment because it is possible she will be unable to recover statutory penalties through the PAGA. We are not persuaded. The complaint alleged numerous Labor Code violations for which *civil penalties* are available under the PAGA (Lab. Code, §§ 2699, 2699.5), and the complaint alleged Windsor regularly employed more than 300 employees at an hourly rate. Recovery under the PAGA could be substantial if multiple violations involving many employees are proven. Thus, Tovar's incentive to pursue litigation further does not depend on her ability to recover statutory penalties through the PAGA or even on all putative class members being entitled to PAGA civil penalties.

"'Given the potential for recovery of significant civil penalties if the PAGA claims are successful, as well as attorney fees and costs, [Tovar has] ample financial incentive to pursue the remaining representative claims under the PAGA and, thereafter, pursue [her] appeal from the trial court's order denying class certification.'" (*Nguyen, supra*, 4 Cal.App.5th at p. 243.) There is no basis to apply the death knell doctrine because dismissal of the class claims does not create a real risk of an elusive final judgment. Accordingly, the trial court's order was not appealable under the death knell doctrine.

II. *Writ of Mandate*

Anticipating we might conclude the court's order was not appealable, Tovar alternatively requests we treat her appeal as a petition for writ of mandate. An order compelling arbitration should be reviewed by writ only "sparingly" (*Cortez, supra*, 15 Cal.App.5th at p. 10) and "'under unusual circumstances'" (*Munoz, supra*, 238 Cal.App.5th at p. 312). After careful review, we decline to exercise our discretion and treat the appeal as a petition for writ of mandate.

III. *PAGA Waiver in Employment Agreement Post Iskanian*

Because Tovar has not convinced us it is necessary to treat her appeal as a petition for writ of mandate, we do not reach the merits of her substantive claim the trial

11

court should have concluded the entire Agreement was unenforceable based on Windsor's bad faith inclusion of the PAGA waiver provision in the arbitration documents years after *Iskanian* and inclusion of the provision giving the arbitrator's findings of law and fact preclusive effect on the court in subsequent litigation on the PAGA claim. Nonetheless, as we discussed with counsel at oral argument, we are troubled by Windsor's inclusion of these provisions.

In *Iskanian* in 2014, our Supreme Court held an employer cannot require an employee to waive a predispute PAGA claim and such a waiver in an employment agreement "is contrary to public policy and unenforceable as a matter of state law." (*Iskanian, supra*, 59 Cal.4th at p. 384.) More than three years after *Iskanian*, Windsor presented Tovar with its arbitration Policy and Agreement, both of which contained a PAGA waiver provision. Windsor cannot claim these documents were simply outdated. The revision date at the bottom of both documents indicates they were revised in March 2015, well after the Supreme Court's decision in *Iskanian*. Thus, Windsor revised its arbitration documents after *Iskanian* but did not remove the illegal PAGA waiver clause.

Windsor's counsel emphasized it did not seek to enforce the PAGA waiver provision. That Windsor did not seek to enforce this unlawful provision does not absolve it of its misdeeds. Windsor has a duty to ensure its arbitration documents conform with the law.[3] Windsor or any other employer who continues to ignore the dictates of *Iskanian* runs the very real risk a court (trial or appellate) will conclude the entire agreement unenforceable. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 124-125, fn. 13 ["a party may waive its right to arbitration through bad faith or willful misconduct"].)

---

[3] At oral argument, Windsor's counsel could not assure us the company's arbitration documents had been recently revised and the unconscionable provisions excised.

DISPOSITION

The appeal is dismissed.  Windsor is awarded its costs on appeal.


O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


GOETHALS, J.