Filed 8/16/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| SYLVIA NIXON, | B302754 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV19029) |
| v. | |
| AMERIHOME MORTGAGE COMPANY, LLC, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Amy D. Hogue, Judge. Affirmed; appeal dismissed in part.

ORIGINAL PROCEEDINGS in mandate. Petition denied.

Justice Law Corporation, Douglas Han, Shunt Tatavos-Gharajeh and Areen Babajanian for Plaintiff and Appellant.

Carothers DiSante & Freudenberger, Todd R. Wulffson, Nancy N. Lubrano and Rachel L. Capler for Defendant and Respondent.

————————————

Sylvia Nixon sued her former employer, AmeriHome Mortgage Company, LLC, in a putative class action lawsuit for unpaid overtime compensation and unlawful business practices. The superior court granted AmeriHome's motion to compel arbitration, ordered arbitration of Nixon's individual claims and dismissed the class claims.

On appeal Nixon argues AmeriHome's motion should have been denied pursuant to Labor Code section 229,[1] which provides, "Actions to enforce the provisions of this article for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate." Alternatively, Nixon contends the superior court abused its discretion under Code of Civil Procedure section 1281.2 by ordering her to arbitrate her wage-and-hour claim notwithstanding the pendency of a nonarbitrable lawsuit against AmeriHome by another former employee under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.).

In light of the uncertainty of our jurisdiction to consider Nixon's appeal from the order compelling arbitration and the absence of any delay or prejudice our intervention at this stage would cause, we find this an appropriate case in which to exercise our discretion to treat the appeal from that order as a petition for writ of mandate. We deny the petition on the merits and affirm the order dismissing the putative class claims.

---

[1] Statutory references are to the Labor Code unless otherwise stated.

2

**FACTUAL AND PROCEDURAL BACKGROUND**

Nixon worked at AmeriHome as a loan review analyst or operations support specialist from mid-October 2015 to February 26, 2018. She reviewed loan files for AmeriHome clients who resided in California, as well as those who lived in other states.

1. *The Agreement To Arbitrate*

As part of her on-boarding process with the company, Nixon executed a seven-page Employment and Confidentiality Agreement. The agreement covered a range of matters directly related to Nixon's position with the company, including her start date, duties, compensation and fringe benefits and her obligation not to disclose or use AmeriHome's confidential information except as required in the performance of her job. The agreement also provided Nixon's employment was on an at-will basis and could be terminated by either party at any time without cause.

Section X of the agreement was titled, "GOVERNING LAW; ARBITRATION; WAIVER OF A JURY TRIAL." That section stated in part: "This Agreement, and all questions relating to its validity, interpretation, performance and enforcement, as well as the legal relations hereby created between the parties hereto, shall be governed and construed under, and interpreted and enforced in accordance with, the laws of the State of California notwithstanding any California or other conflict of law provision to the contrary and any dispute or controversy arising out of or relating to this Agreement or your employment, other than injunctive relief as provided in this Agreement, will be settled exclusively by arbitration, conducted before a single arbitrator in California (applying California law) in accordance with, and pursuant to, the National Rules for the

3

Resolution of Employment Disputes of the American Arbitration Association ('AAA'). . . . Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction. Either party may commence litigation in court to obtain injunctive relief in aid of arbitration, to compel arbitration, or to confirm or vacate an award, to the extent authorized by the Federal Arbitration Act or the California Arbitration Act."

2. *Nixon's Putative Class Action Complaint*

On June 3, 2019 Nixon filed a complaint against AmeriHome, individually and on behalf of a putative class of all current and former hourly paid or nonexempt employees of AmeriHome, for failure to pay minimum wages and required overtime wages pursuant to sections 510, 1194 and 1198. Nixon specifically alleged the first cause of action for unpaid wages was brought pursuant to section 229. Nixon also alleged a second cause of action for unlawful business practices (Bus. & Prof. Code, § 17200 et seq.), relying on predicate violations of sections 510, 1194 and 1198.

3. *AmeriHome's Motion To Compel Arbitration*

AmeriHome moved on June 28, 2019 to compel arbitration of Nixon's individual claims, to dismiss the class claims and to stay judicial proceedings pending completion of the arbitration. AmeriHome submitted a declaration from its human resources director, Shelley Tam, which described how AmeriHome's business and Nixon's work involved interstate commerce. Tam's declaration also attached a copy of Nixon's Employment and Confidentiality Agreement. AmeriHome argued, because interstate commerce was involved, the Federal Arbitration Act (FAA) governed the agreement and preempted section 229's prohibition of arbitration of unpaid wage claims. AmeriHome

4

also relied on language in the arbitration agreement expressly stating arbitration could be compelled "to the extent authorized by the Federal Arbitration Act."

In opposing the motion to compel arbitration, Nixon did not dispute the authenticity of the Employment and Confidentiality Agreement submitted by AmeriHome or contend her employment did not involve interstate commerce. Nonetheless, she argued the FAA did not apply—and Labor Code section 229 was not preempted—because of the agreement's broad choice-of-law provision, which stated it would be "construed[,] . . . interpreted and enforced" in accordance with California law. Nixon also contended, whether federal or state arbitration rules applied, the superior court should deny the motion pursuant to Code of Civil Procedure section 1281.2, subdivision (c), in light of the pending PAGA action initiated by Anthony Brooks (*Brooks v. AmeriHome Mortgage Company, LLC* (Super. Ct. Ventura County, No. 56-2019-00524903-CU-OE-VTA) (*Brooks*)), seeking civil penalties for wage violations.[2] Nixon argued the *Brooks* action and her lawsuit arose from the same series of transactions, which created the possibility of conflicting rulings on common issues of fact and law.

AmeriHome filed a reply contending the agreement's choice-of-law provision should not be interpreted to mean California law governed enforcement of the arbitration provision because the agreement expressly permitted arbitration to be compelled pursuant to the FAA. AmeriHome also argued the arbitration agreement expressly applied to any dispute relating

---

[2] The superior court granted Nixon's request for judicial notice of the complaint filed in the *Brooks* action.

5

to Nixon's employment, which included her wage claim, and she should not be allowed to negate the core purpose of the arbitration agreement by invoking Labor Code section 229. Regarding Code of Civil Procedure section 1281.2, subdivision (c), AmeriHome argued the FAA also preempted this provision and, in any event, there was no risk of inconsistent rulings and, therefore, no reason to deny or stay arbitration.

4. *The Superior Court's Ruling*

After hearing oral argument the superior court concluded, "It is clear the parties intended to arbitrate and that the FAA applies." In its written order the court ruled there existed a valid arbitration agreement that covered the claims alleged by Nixon. The court rejected Nixon's argument that Labor Code section 229 exempted her wage claim from arbitration. While acknowledging the agreement contained a provision that it would be "governed[,] . . . construed under[,] . . . interpreted and enforced" in accordance with California law, the court found the choice-of-law provision insufficient to negate the parties' agreement to arbitrate "any dispute or controversy arising out of or relating to this Agreement or your employment." The court declined to exercise its discretion to deny AmeriHome's motion pursuant to Code of Civil Procedure section 1281.2, subdivision (c), because the case did not arise out of the same transaction as *Brooks*, and compelling arbitration would not necessarily result in conflicting rulings.

The court granted AmeriHome's motion to compel arbitration of Nixon's individual claims, dismissed the class claims and stayed proceedings in the superior court pending resolution of the arbitration. Nixon filed a timely notice of appeal.

6

## DISCUSSION

1. *Appealability*

A superior court's order denying class certification or dismissing class claims is appealable pursuant to the death knell doctrine. (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 757 [when an order "effectively [rings] the death knell for the class claims, [the court] treat[s] it as in essence a final judgment on those claims"].) The death knell doctrine seeks to ensure that an order operating as "the practical equivalent of a final judgment for absent class members" does not evade review entirely because "without the possibility of a group recovery, the plaintiff will lack incentive to pursue claims to final judgment." (*Cortez v. Doty Bros. Equipment Co.* (2017) 15 Cal.App.5th 1, 8.)

An order compelling arbitration generally is not immediately appealable. (*Ashburn v. AIG Financial Advisors, Inc.* (2015) 234 Cal.App.4th 79, 94 ["[a]n order granting a petition to compel arbitration is not appealable, but is reviewable on appeal from a subsequent judgment on the award"]; *Phillips v. Sprint PCS* (2012) 209 Cal.App.4th 758, 766 ["[o]rdinarily, no immediate appeal lies from an order compelling arbitration and review of the order must await appeal from a final judgment entered after arbitration"]; *Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 648 ["no immediate, direct appeal lies from an order compelling arbitration"]; see Code Civ. Proc., § 1294 [defining appealable orders in the context of arbitration proceedings].)

It is far from certain whether the judicially created death knell exception to the one final judgment rule for an order dismissing class claims extends to make appealable an otherwise nonappealable order compelling arbitration when the two orders

7

are issued simultaneously. (See *Cortez v. Doty Bros. Equipment Co.*, *supra*, 15 Cal.App.5th at p. 10.) Because the order compelling arbitration in this context shares certain characteristics of an interlocutory or interim order appealable under Code of Civil Procedure section 906—that is, it "'involves the merits or necessarily affects the judgment or order appealed from or . . . substantially affects the rights of a party'" (see *Estate of Dayan* (2016) 5 Cal.App.5th 29, 38-39; *Abramson v. Juniper Networks, Inc.*, *supra*, 115 Cal.App.4th at p. 649)[3]—the order compelling arbitration of Nixon's individual claims is arguably appealable as part of Nixon's appeal of the dismissal of her class claims. (Cf. *Franco v. Athens Disposal Co., Inc.* (2009) 171 Cal.App.4th 1277, 1288 [holding appealable an order finding class arbitration waiver enforceable and compelling arbitration of individual claims as "the 'death knell' of class litigation through arbitration" without addressing the general nonappealability of an order compelling arbitration].)[4] However, by its terms Code of

---

[3]     The order compelling arbitration unquestionably involves the merits of the controversy under appeal, that is, Nixon's right to pursue a class action for unpaid wages, and necessarily affects the order being appealed. The class action claim was dismissed because the motion to compel arbitration was granted; but for that order, the class action would have survived. And for the same reason, the order compelling arbitration substantially affects Nixon's rights.

[4]     Although AmeriHome does not contest Nixon's right to appeal the order compelling arbitration, the parties' consent is insufficient to create appellate jurisdiction. (See, e.g., *Ponce-Bran v. Trustees of Cal. State University* (1996) 48 Cal.App.4th 1656, 1660, fn. 2 ["[a]ppellate jurisdiction cannot be conferred by consent, stipulation, estoppel, or waiver"].)

8

Civil Procedure section 906 authorizes review of an interim nonappealable order "[u]pon an appeal pursuant to Section 904.1 or 904.2"— that is, an appeal from a final judgment, postjudgment orders and certain specific, defined interlocutory orders. Section 906, therefore, provides, at best, an imperfect basis for jurisdiction in an appeal pursuant to the judicially created death knell doctrine. (See *Cortez v. Doty Bros. Equipment Co.*, *supra*, 15 Cal.App.5th at p. 10.)

In light of the uncertainty of Nixon's right to appeal the order compelling arbitration as part of her appeal of the dismissal of the class claims and the significance of the issue she raises concerning the applicability of section 229 to the scope of the parties' agreement to arbitrate, we exercise our discretion to treat that portion of Nixon's appeal directed to the order compelling arbitration as a petition for writ of mandate and consider the merits of that order. (See *Olson v. Cory* (1983) 35 Cal.3d 390, 401; *Curtis v. Superior Court* (2021) 62 Cal.App.5th 453, 465; *Williams v. Impax Laboratories, Inc.* (2019) 41 Cal.App.5th 1060, 1071-1072; *Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1123.) Reviewing an order compelling arbitration by writ should be done sparingly and only in an appropriate circumstance to avoid defeating the purpose of the arbitration statute. (*Cortez v. Doty Bros. Equipment Co.*, *supra*, 15 Cal.App.5th at p. 10; see *Young v. RemX, Inc.* (2016) 2 Cal.App.5th 630, 635-636.) Here, however, arbitration has already been significantly delayed, and the issues fully briefed. Review of the arbitration order, integral to a proper evaluation of the order dismissing class claims, will not cause any additional delay or subvert the purpose of the arbitration statute. (See *Nelsen,* at p. 1123 [treating appeal from order compelling

9

arbitration as writ petition]; *Phillips v. Sprint PCS, supra,*
209 Cal.App.4th at p. 767 [same].)

    2.  *Governing Law*

    Section 2 is "the primary substantive provision of the FAA"
(9 U.S.C. § 1 et seq.).  (*Cronus Investments, Inc. v. Concierge
Services* (2005) 35 Cal.4th 376, 384 (*Cronus*); accord, *Judge v.
Nijjar Realty, Inc.* (2014) 232 Cal.App.4th 619, 631 ["[s]ection 2 of
the FAA is a substantive rule that applies in both federal and
state courts"].)  It provides, "A written provision in any maritime
transaction or a contract evidencing a transaction involving
commerce to settle by arbitration a controversy thereafter arising
out of such contract or transaction . . . shall be valid, irrevocable,
and enforceable, save upon such grounds as exist at law or in
equity for the revocation of any contract."  (9 U.S.C. § 2.)
Section 2 "'create[s] a body of federal substantive law of
arbitrability, applicable to any arbitration agreement within the
coverage of the Act.'"  (*Perry v. Thomas* (1987) 482 U.S. 483, 489;
see *Southland Corp. v. Keating* (1984) 465 U.S. 1, 10 ["[i]n
enacting § 2 of the [FAA], Congress declared a national policy
favoring arbitration and withdrew the power of the states to
require a judicial forum for the resolution of claims which the
contracting parties agreed to resolve by arbitration"]; *Moses H.
Cone Memorial Hospital v. Mercury Const. Corp.* (1983) 460 U.S.
1, 24 ["Section 2 is a congressional declaration of a liberal federal
policy favoring arbitration agreements, notwithstanding any
state substantive or procedural policies to the contrary.  The
effect of the section is to create a body of federal substantive law
of arbitrability, applicable to any arbitration agreement within
the coverage of the [FAA]"]; *Cronus,* at p. 384 ["[t]he policy of

enforceability established by section 2 of the FAA is binding on state courts as well as federal courts"].)

Section 2, as all other substantive provisions of the FAA, applies when a contract involves interstate commerce. (*Volt Info. Sciences v. Bd. of Trustees of Leland Stanford Jr. U.* (1989) 489 U.S. 468, 476 (*Volt*); *Cronus*, *supra*, 35 Cal.4th at p. 384; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 405 (*Rosenthal*).) However, the FAA does not require the parties to arbitrate under any specific set of procedural rules. (*Volt*, at pp. 476, 479; *Cronus*, at p. 385.) "Just as [the parties] may limit by contract the issues which they will arbitrate [citation], so too may they specify by contract the rules under which the arbitration will be conducted." (*Volt*, at p. 479.) "[T]he procedural provisions of the CAA [the California Arbitration Act] apply in *California* courts by default. . . . [T]he parties may '*expressly* designate that any arbitration proceeding [may] move forward under the FAA's procedural provisions rather than under state procedural law.' [Citation.] Absent such an express designation, however, the FAA's procedural provisions do not apply in state court." (*Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 174-175; see *Mave Enterprises, Inc. v. Travelers Indemnity Co.* (2013) 219 Cal.App.4th 1408, 1429 ["the procedural provisions of the CAA" apply in California courts "absent a choice-of-law provision expressly mandating the application of the procedural law of another jurisdiction"].)

Code of Civil Procedure section 1281.2, subdivision (c), is among the CAA's procedural provisions that may be enforced by California courts even with respect to arbitration contracts subject to the FAA's substantive rules. (See *Volt*, *supra*, 489 U.S. at pp. 470, 477-479 [application of section 1281.2 to stay

11

arbitration would not undermine the goals and policies of, and is not preempted by, the FAA in a case where the parties have agreed that their arbitration agreement will be governed by California law].) Subdivisions (c) and (d), fourth paragraph, of section 1281.2 authorize the superior court to deny or stay arbitration if a party to the arbitration agreement is also a party to a pending court action "with a third party arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact."

3. *Burdens of Proof and Standards of Review*

The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence an agreement to arbitrate exists. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236; accord*, Rosenthal, supra,* 14 Cal.4th at p. 413.) The party seeking to enforce the arbitration agreement also bears the burden of establishing the FAA applies and preempts otherwise governing provisions of state law or the parties' agreement. (See *Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 687 [a petitioner seeking an order to compel arbitration pursuant to the FAA must show that the subject matter of the agreement involves interstate commerce]; *Woolls v. Superior Court* (2005) 127 Cal.App.4th 197, 211 [same]; see also *Shepard v. Edward Mackay Enterprises, Inc.* (2007) 148 Cal.App.4th 1092, 1101 [enforcing party bears the burden of demonstrating FAA preemption].)

Once an agreement to arbitrate has been proved, the burden shifts to the party opposing arbitration to establish a defense to the enforcement of the agreement, including "the burden of demonstrating that the exemption [from arbitration]

12

applies." (*Performance Team Freight Systems, Inc. v. Aleman* (2015) 241 Cal.App.4th 1233, 1241; see generally *Rosenthal, supra,* 14 Cal.4th at p. 413.)

We review de novo the superior court's interpretation of an arbitration agreement, including whether federal or state law governing arbitration applies, when the interpretation does not involve conflicting extrinsic evidence. (See *Victrola 89, LLC v. Jaman Properties 8 LLC* (2020) 46 Cal.App.5th 337, 346 [de novo review to determine whether the arbitration agreement incorporated the FAA's procedural provisions "with no extrinsic evidence"]; *Cortez v. Doty Bros. Equipment Co.*, *supra*, 15 Cal.App.5th at p. 12 ["de novo review to the superior court's interpretation of an arbitration agreement that does not involve conflicting extrinsic evidence"].) However, "the ultimate determination [pursuant to Code of Civil Procedure section 1281.2, subdivision (c),] whether to stay or deny arbitration based on the possibility of conflicting rulings on common questions of law or fact is reviewed for an abuse of discretion." (*Daniels v. Sunrise Senior Living, Inc.* (2013) 212 Cal.App.4th 674, 680; accord, *Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1406.)

4. *Section 229 Does Not Exempt Nixon's Wage Claim from Arbitration*

Because, as Nixon concedes, she was not a transportation worker and her contract with AmeriHome involved interstate commerce, the parties' arbitration agreement is covered by the FAA. As discussed, without an express choice-of-law provision, such an agreement would be subject to the procedural provisions of the CAA; but section 2 of the FAA would preempt Labor Code section 229. (*Perry v. Thomas*, *supra*, 482 U.S. at pp. 490-491

13

["clear federal policy places § 2 of the Act in unmistakable conflict with California's § 229 requirement that litigants be provided a judicial forum for resolving wage disputes. Therefore, under the Supremacy Clause, the state statute must give way"]; see *Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1207 ["[a]n exception" to the exemption set forth in section 229 "occurs when there is federal preemption by the FAA, as applied to contracts evidencing interstate commerce"]; cf. *Garrido v. Air Liquide Industrial U.S. LP* (2015) 241 Cal.App.4th 833, 845 [although the FAA preempts section 229, "when only the CAA applies" in cases not covered by the FAA, section 229 is properly enforced].)

Notwithstanding this general principle of preemption, the parties could provide in their arbitration agreement that a dispute regarding unpaid wages—the subject of section 229—is not arbitrable. (See *Volt*, *supra*, 489 U.S. at p. 479 [the parties may limit by contract the issues they will arbitrate].) The issue here is whether the general choice-of-law provision in the Employment and Confidentiality Agreement, which governed all aspects of Nixon's relationship with AmeriHome, not simply the arbitration provision, evidences the parties' intent to exclude unpaid wage claims from their otherwise all-inclusive agreement to arbitrate "any dispute or controversy arising out of or relating to this Agreement or your employment."

The United States Supreme Court addressed a nearly identical issue in *Mastrobuono v. Shearson Lehman Hutton* (1995) 514 U.S. 52 (*Mastrobuono*), in which the Court considered whether a New York state law that authorized courts, but not arbitrators, to award punitive damages precluded an award of punitive damages in an arbitration pursuant to an agreement

14

subject to the FAA.  The Supreme Court explained the parties could have agreed to waive any claim to punitive damages in their agreement.  (*Id*. at pp. 56-57 ["if the contract says 'no punitive damages,' that is the end of the matter, for courts are bound to interpret contracts in accordance with the expressed intentions of the parties—even if the effect of those intentions is to limit arbitration"].)  But they did not.  Rather, although the broadly worded arbitration clause did not mention (and thus presumably included the possibility of) punitive damages, the respondents argued, by providing that their agreement "shall be governed by the laws of the State of New York," this choice-of-law provision "evidences the parties' express agreement that punitive damages should not be awarded in the arbitration of any dispute arising under their contract."  (*Id*. at pp. 58-59, 56.)

The Supreme Court rejected that argument and held the arbitrator was authorized to award punitive damages.  The Court explained, "At most, the choice-of-law clause introduces an ambiguity into an arbitration agreement that would otherwise allow punitive damages awards.  As we pointed out in *Volt*, when a court interprets such provisions in an agreement covered by the FAA, 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.'"  (*Mastrobuono*, *supra*, 514 U.S. at p. 62.)  "[T]he best way to harmonize the choice-of-law provision with the arbitration provision," the Court continued, "is to read 'the laws of the State of New York' to encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators.  Thus, the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers

15

arbitration; neither sentence intrudes upon the other. In contrast, respondents' reading sets up the two clauses in conflict with one another: one foreclosing punitive damages, the other allowing them. This interpretation is untenable." (*Id.* at p. 64.)[5]

Applying the principles of *Mastrobuono*, our colleagues in Division Eight of this court, in a tightly written opinion, held that interpreting a general California choice-of-law provision in an agreement as evidencing the parties' intent to apply section 229 to an arbitration provision covering all employment claims, including those relating to wages, "departs from common sense and makes mischief." (*Bravo v. RADC Enterprises, Inc.* (2019) 33 Cal.App.5th 920, 923.) We agree with the analysis in *Bravo* (and follow, as we must, *Mastrobuono*) and conclude the choice-of-law provision in the Employment and Confidentiality Agreement signed by Nixon, which covers a wide range of matters including interpretation of the at-will employment and confidentiality

---

[5] Expanding its analysis, the Supreme Court stated the respondents' choice-of-law argument would be persuasive "only if 'New York law' means 'New York decisional law, including that State's allocation of power between courts and arbitrators, notwithstanding otherwise-applicable federal law.' But, as we have demonstrated, the provision need not be read so broadly. It is not, in itself, an unequivocal exclusion of punitive damages claims." (*Mastrobuono, supra,* 514 U.S. at p. 60.) Similarly, the Nixon-AmeriHome choice-of-law provision, although including the phrase "notwithstanding any California or other conflict of law provision to the contrary," does not state "California law applies, including statutory provisions limiting the power of arbitrators notwithstanding otherwise-applicable federal law" and, thus, is not, in itself, an unequivocal exclusion of unpaid wage claims from arbitration.

16

provisions in the parties' agreement, "becomes consistent with the parties' intent to arbitrate all disputes when we read 'the laws of the State of California' to *include* substantive principles California courts would apply, but to *exclude* special rules limiting the authority of arbitrators." (*Bravo*, at p. 923.)

Nixon attempts to distinguish *Bravo* by describing the choice-of-law provision in that case as "narrow" compared to the "broad and all-encompassing" provision in the case at bar. We question the accuracy of that characterization: "Governed by and interpreted in accordance with," as in *Bravo*, is fundamentally the same as "governed by, construed under, interpreted and enforced in accordance," the language in Nixon's agreement. Far more significant in terms of determining whether the choice-of-law provision evidences the parties' agreement to incorporate a state law that otherwise would be preempted by the FAA is that the choice-of-law provision in *Bravo* was contained in the parties' two-page arbitration agreement, manifesting their intent to apply California law specifically to arbitration. (*Bravo v. RADC Enterprises, Inc.*, *supra*, 33 Cal.App.5th at pp. 921-922.) Here, in contrast, the choice-of-law provision applied to the entirety of the parties' employment agreement, making any purported agreement to incorporate section 229 even more illusory than it was in *Bravo*.

Nixon's reliance on *Mount Diablo Medical Center v. Health Net of California, Inc.* (2002) 101 Cal.App.4th 711 (*Mt. Diablo*) to argue the California choice-of-law provision in the Employment and Confidentiality Agreement is broad enough to incorporate Labor Code section 229 is similarly misplaced, if for no other reason than *Mt. Diablo* addressed the applicability of Code of Civil Procedure section 1281.2, subdivision (c), a procedural

17

provision, which, as discussed, is not preempted by the FAA (*Volt*, *supra*, 489 U.S. at p. 479), not a substantive provision like Labor Code section 229, which is preempted by section 2 of the FAA.  (*Perry v. Thomas*, *supra*, 482 U.S. at pp. 490-491.)[6]

Moreover, Nixon misreads *Mt. Diablo*, which fully supports the conclusion section 229 is not applicable in this case.  The *Mt. Diablo* court found the "broad, unqualified and all-encompassing" choice-of-law provision stating "'the validity, construction, interpretation and enforcement of this Agreement' shall be governed by California law" established the parties' intent "to incorporate California procedural law governing the enforcement of their agreement to arbitrate."  (*Mt. Diablo*, *supra*, 101 Cal.App.4th at pp. 722, 714.)[7]  The court explained, under the analysis in *Mastrobuono*, *supra*, 514 U.S. 52, "[i]f the language of the choice-of-law clause is broad enough to include state law on the subject of arbitrability, . . . the second step in the court's analysis, under *Mastrobuono*, must be to determine whether the particular provision of state law in question is one that reflects a hostility to the enforcement of arbitration agreements that the FAA was designed to overcome.  If so, the choice-of-law clause should not be construed to incorporate such a provision, at least

_____

[6]    Likewise, *Mastick v. TD Ameritrade, Inc.* (2012) 209 Cal.App.4th 1258, which Nixon also cites, concerned the applicability of Code of Civil Procedure section 1281.2.

[7]    Contrary to Nixon's assertion in her opening brief, both *Cronus*, *supra,* 35 Cal.4th 376 and *Mt. Diablo*, involved only the application of state procedural rules in the context of contracts that involve interstate commerce and, thus, fall within the coverage of the FAA.  (*Cronus*, at p. 384; *Mt. Diablo*, *supra*, 101 Cal.App.4th at p. 722.)

18

in the absence of unambiguous language in the contract making the intention to do so unmistakably clear." (*Mt. Diablo*, at p. 724.)

The court then turned to an analysis of Code of Civil Procedure section 1281.2, subdivision (c), and concluded the section was "not a provision designed to limit the rights of parties who choose to arbitrate or otherwise to discourage the use of arbitration. Rather, it [was] part of California's statutory scheme designed to enforce the parties' arbitration agreements, as the FAA requires." (*Mt. Diablo, supra,* 101 Cal.App.4th at p. 726.) Because Code of Civil Procedure section 1281.2, subdivision (c), was not in conflict with the FAA's guiding principle of enforcing arbitration agreements, the FAA did not preempt its application in a situation where the parties agreed to apply California procedural law to enforce the arbitration agreement. (*Mt. Diablo,* at p. 729.)

In discussing *Mt. Diablo* and arguing for application of Labor Code section 229, Nixon fails to address the second step of the *Mt. Diablo/Mastrobuono* analysis. The choice-of-law provision in the Employment and Confidentiality Agreement broadly states the agreement will be "governed by, construed under, and interpreted and enforced in accordance with" California law; thus, as in *Mt. Diablo,* the provision may reasonably be construed "to incorporate California procedural law governing the enforcement of their agreement to arbitrate"—the first step. But unlike Code of Civil Procedure section 1281.2, Labor Code section 229, which exempts wage claims from arbitration, unquestionably "reflects a hostility to the enforcement of arbitration agreements that the FAA was designed to overcome." And, as discussed, neither the choice-of-

19

law provision nor the arbitration agreement contains "unambiguous language" making it "unmistakably clear" that the parties intended to incorporate section 229 while agreeing to arbitrate "any dispute or controversy arising out of or relating to" Nixon's employment at AmeriHome.

5. *The Superior Court Properly Exercised Its Discretion Under Code of Civil Procedure Section 1281.2 To Order Arbitration of Nixon's Individual Claims*

Although Labor Code section 229 is not incorporated into the parties' agreement to arbitrate, Code of Civil Procedure section 1281.2 is. (See *Cronus*, *supra,* 35 Cal.4th at p. 380 [the FAA does not preempt application of Code of Civil Procedure section 1281.2, subdivision (c), where "the parties agreed that their arbitration agreement would be governed by California law"]; *Williams v. Atria Las Posas* (2018) 24 Cal.App.5th 1048, 1054.) Section 1281.2, subdivision (c), provides the court may decline to enforce an arbitration agreement if a party to the agreement is also a party to a pending court action with a third party, "arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." When subdivision (c) applies, section 1281.2 "identifies four options from which the trial court may choose, including denial or stay of arbitration proceedings" (*Williams*, at p. 1054), but also a stay of court proceedings and order to arbitrate—the option chosen here. "These options are entrusted to the trial court's discretion." (*Ibid.*)

The superior court did not abuse its discretion by declining to deny or stay arbitration pursuant to Code of Civil Procedure section 1281.2. First, the court reasonably concluded the conditions for invoking the third-party litigation exception did

not exist because Nixon's lawsuit did not arise out of the same transaction as the *Brooks* action, and there was no likelihood of conflicting rulings on a common issue of law or fact. The plaintiff in *Brooks* seeks civil penalties in a representative action under PAGA for Labor Code violations while Nixon will be arbitrating only her individual wage claim. As the California Supreme Court recently explained, "[a] PAGA claim is legally and conceptually different from an employee's own suit for damages and statutory penalties." (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 81; cf. *Jarboe v. Hanlees Auto Group* (2020) 53 Cal.App.5th 539, 557 [rejecting defendant's argument a stay of the PAGA claim was necessary because the plaintiff's "PAGA claim and his individual claims arise out of the same nucleus of facts alleged to violate the Labor Code"; although "there may be similarities between the claims," the PAGA claim is conceptually different from an individual wage claim]; see also *Brooks v. AmeriHome Mortgage Co., LLC* (2020) 47 Cal.App.5th 624, 629 ["Brooks alleged a single cause of action under PAGA and did not allege an individual claim for wage recovery in his complaint. . . . Because he brought a representative claim, he cannot be compelled to separately arbitrate whether he was an aggrieved employee"].)

Second, even when the third-party litigation exception applies, the superior court has discretion to "order arbitration among the parties who have agreed to arbitration." (Code Civ. Proc., § 1281.2, subd. (d), 4th par.) The superior court's decision to elect this option was appropriate here: Whatever potential there might otherwise be for conflicting rulings in the *Brooks* action, pending in Ventura County Superior Court, and Nixon's case, that potential is not diminished—and may even be

heightened—by trying her lawsuit in Los Angeles Superior Court, rather than having it decided by an arbitrator.  Under these circumstances, the superior court acted well within its discretion in ordering arbitration.  (See generally *Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 351 ["[t]he reasonableness of an approach that was not selected [under section 1281.2, subdivision (c),] does not entail the unreasonableness of the one that was"].)

### DISPOSITION

The order dismissing class claims is affirmed.  The appeal of the order compelling arbitration is dismissed.  Deeming that portion of the appeal as a petition for writ of mandate, the petition is denied.  AmeriHome is to recover its costs in this proceeding.


PERLUSS, P. J.

We concur:



FEUER, J.



IBARRA, J.[*]

---

[*]    Judge of the Santa Clara Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

22