Filed 10/20/22  Mendez-Villegas v. Duarte Nursery CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| TERESA E. MENDEZ-VILLEGAS et al., Plaintiffs and Appellants, v. DUARTE NURSERY, INC. et al., Defendants and Respondents. | F081733 (Super. Ct. No. 2014212) **OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Stanislaus County.  Stacy P. Speiller, Judge.

Mallison & Martinez, Stan S. Mallison, Hector R. Martinez, Liliana Garcia and Daniel C. Keller for Plaintiffs and Appellants.

Law Offices of Brunn & Flynn, Gerald E. Brunn and Mahanvir S. Sahota for Defendants and Respondents.

-ooOoo-

Teresa E. Mendez-Villegas, Maria Navarro, Loyda Aguilar, and Olimpia Cano de Peral (collectively, Plaintiffs) appeal from the trial court's order denying their motion for class certification.[1]

Plaintiffs filed their original class action complaint alleging various Labor Code violations in 2015. They moved for class certification in December of 2019—less than three months before a jury trial scheduled for March 3, 2020. The COVID-19 pandemic ultimately pushed the trial date back nine months to December of 2020. In the interim, the trial court denied class certification in part, because Plaintiffs' "dilatory approach to [the] litigation" rendered it "impossible" to complete class discovery before trial.

On appeal, Plaintiffs ask us to reverse the trial court's order and remand with instructions that this case proceed as a class action.

However, an order denying class certification is not appealable where, as here, a cause of action under the Labor Code Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.) remains pending in the trial court. (See *Munoz v. Chipotle Mexican Grill, Inc.* (2015) 238 Cal.App.4th 291, 311 (*Munoz*).) Said differently, this case does not implicate the "death knell" doctrine allowing for immediate appellate review of an order denying certification of class claims while leaving intact individual claims. (*Cortez v. Doty Bros. Equipment Co.* (2017) 15 Cal.App.5th 1, 9 ["We … hold the death knell exception to the one final judgment rule does not apply when a PAGA claim remains pending in the trial court following termination of the class claims."].)

An appealable order is a "jurisdictional prerequisite to an appeal." (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126.) Moreover, this case does not present " 'unusual circumstances' " such that we may treat Plaintiffs' premature appeal as a petition for

_____

[1]     This is a companion appeal to *Mendez-Villegas v. Duarte* (Oct. 20, 2022, F082174) (nonpub. opn.), which concerns the trial court's entry of summary judgment in favor of defendant John Duarte.

2.

extraordinary writ in the alternative. (*Munoz*, *supra*, 238 Cal.App.4th at p. 312 [declining to grant writ relief on an order denying class certification].)

Therefore, we dismiss Plaintiffs' appeal and award defendants their costs.

## FACTS

*GENERAL BACKGROUND*

On April 22, 2015, Plaintiffs filed a class action complaint against defendants (1) Duarte Nursery, Inc. (DNI); (2) Michael Duarte; (3) Jeff Duarte; (4) John Duarte; (5) Patricia Lopez; and (6) Engracia Lopez. The original complaint stated seven causes of action against DNI arising from violations of the Labor Code and a violation of the unfair competition law (Bus. & Prof. Code, § 17200 et seq.). An eighth cause of action stated a PAGA claim against all defendants.

Plaintiffs filed the operative first amended class action complaint (FAC) on August 12, 2015. The FAC stated the same causes of action but removed Michael Duarte as a defendant.

Defendants[2] filed their operative second amended answer on December 28, 2015.

According to the record, the parties litigated discovery disputes in 2018 over Defendants "unaltered" timekeeping data that culminated in the trial court granting a motion to compel production of documents on July 31, 2018. Following this, Plaintiffs' database expert, Aaron Woolfson, visited DNI's facility on December 8, 2018.

*PLAINTIFFS' MOTION FOR CLASS CERTIFICATION*

On December 12, 2019, Plaintiffs moved for class certification pursuant to Code of Civil Procedure section 382 and California Rules of Court, rule 3.764. At the time of filing, trial was scheduled for March 3, 2020.

---

[2]    "Defendants" refers to DNI, Jeff Duarte, John Duarte, Patricia Lopez; and Engracia Lopez, collectively.

3.

Plaintiffs sought class certification because of DNI's alleged "workforce-wide practices and policies that deny non-exempt employees all minimum wages owed, lawful meal periods, and derivative violations and penalties." The motion alleged DNI "auto-deducted thirty minutes for the majority of nursery workers without having employees clock in or out for meal periods and with no proof that complete and timely meal periods were provided." Plaintiffs further asserted DNI denied employees full 30-minute meal periods, "after considering the significant time spent walking to and from the rest area and removing and putting on protective gear."

Consequently, Plaintiffs sought certification of a global class and five subclasses:

> "**Proposed Global Class**
> "All current and former non-exempt agricultural workers employed by [DNI] at any time from April 22, 2011 to the present.
>
> "**Auto-Deduct Meal Period Subclass**
> "All current and former non-exempt agricultural workers employed by [DNI] who worked at least one shift of 5 hours or greater at any time from April 22, 2011 to the present.
>
> "**Short, Untimely, Incomplete, or Missed Meal Period Subclass**[3]
> "All current and former non-exempt agricultural workers employed by [DNI] at any time from April 22, 2011 to the present.
>
> "**Unpaid Time Subclass – Time Worked During Meal Periods**[4]
> "All current and former non-exempt agricultural workers employed by [DNI] who worked at least one shift of 5 hours or greater at any time from April 22, 2011 to the present.
>
> "**Unpaid Time Subclass – Pre and Post-Shift Time Worked**[5]
> "All current and former non-exempt agricultural workers employed by [DNI] who worked at least one shift at any time from April 22, 2011 to the present.

---

**3** Future references to this subclass will be to the "Incomplete Meal Period Subclass."

**4** Future references to this subclass will be to the "Unpaid Meal Period Subclass."

**5** Future references to this subclass will be to the "Pre-and Post-Shift Unpaid Time Subclass."

4.

### "Unpaid Time Subclass – Defendants' Unlawful Time-Shaving Policy[6]

"All current and former non-exempt agricultural workers employed by [DNI] at any time from April 22, 2011 to the present."[7]

According to Plaintiffs, "at least 2,500" DNI employees constituted their proposed global class and subclasses. On this basis, Plaintiffs claimed their motion satisfied the "ascertainability and numerosity" prerequisites for class certification.

Moreover, the motion argued "common issues of law and fact" predominated over each subclass. For example, regarding the Auto-Deduct Meal Period Subclass, Plaintiffs argued DNI "embraced a policy of auto-deducting 30-minute meal periods" at the fifth hour of employees' shifts "without a cessation of plant operations" and in violation of California law. Here, Plaintiffs noted their expert, Woolfson, reviewed shift records and concluded " '223,253 of 311,643 (71.64[ percent]) shifts greater than five (5) hours indicate an auto-deducted meal.' " Plaintiffs also emphasized the deposition testimony of DNI's person most qualified, Chris Yates, wherein he stated that DNI's timekeeping system, Hour Track, "automatically deducts a meal period."

Next, regarding the Incomplete Meal Period Subclass, Plaintiffs cited an "unlawful policy" of shortening employee lunches. Again, Plaintiffs supported this claim with expert testimony from Woolfson that "68[ percent] of recorded meals are violative of California meal period law." Additionally, Plaintiffs submitted declarations from putative class members that discussed ending breaks early in order to clean workstations, remove protective equipment, and walk toward the break area. For example, one class member testified employees stopped their 30-minute break five minutes early in order to put on "gear" because "[w]e were expected to be back at our stations, ready to work, by

---

**6** Future references to this subclass will be to the "Time Shaving Policy Subclass."

**7** Plaintiffs also moved to certify the following derivative claims: (1) inaccurate/incomplete wage statement subclass; (2) final paycheck subclass; and (3) violation of Business and Professions Code section 17200.

the time our lunch period was over." Plaintiffs argued this presented "common questions … capable of resolution on a class-wide basis."

Finally, with respect to the remaining three subclasses, Plaintiffs argued Defendants maintained an "unlawful policy" of (1) refusing to pay employees all hours worked, (2) requiring class members to arrive early to clock in on time, and (3) allowing employees to work during meal periods. Again, Plaintiffs credited Woolfson's testimony that "over 90[ percent] of checks paid to putative class members contained an underpayment." Putative class member declarations also described arriving to work early to stand in line to clock in for shifts. In addition, a DNI manager, Jesus Ortiz, testified he witnessed employees lining up before their shift to clock in on time.

*SUBSEQUENT EVENTS AND DEFENDANTS' OPPOSITION*

The parties agreed to continue the hearing date on the class certification motion to March 12, 2020, to facilitate class discovery. The parties also agreed to vacate the March 3, 2020 trial date. They further stipulated to extend the five-year statutory deadline for Plaintiffs to bring the matter to trial pursuant to Code of Civil Procedure section 583.310 to September 18, 2020.

Defendants opposed Plaintiffs' motion on several grounds. They argued "distinct individual issues" predominated over the litigation rather than issues suitable for class treatment. For example, Defendants noted that DNI added time clocks at its facilities since 2011 and so "the availability of time clocks to employees has changed during the purported class period of 2011 to the present." Elsewhere, Defendants highlighted "contradictory" evidence such as one class member's testimony that he only had "meal and break issues" at DNI's grafting department but not in other departments. Another class member "worked in the proposed class period for a total of three days as a trainee and was paid differently from regular employees." A named plaintiff testified that one manager cut her breaks short, but when she worked for a different manager, she received

6.

her breaks.  According to Defendants, these "numerous, conflicting, individual claims" rendered class certification "impossible."

Defendants also argued class certification was inappropriate because DNI did not maintain a "policy or practice" related to the alleged subclasses.  For example, regarding the Auto-Deduct Meal Period Subclass, the opposition claimed DNI "makes breaks and meal periods mandatory" and that the named Plaintiffs and putative class members testified they "clocked in and out" for meal periods.

With respect to the Incomplete Meal Period and Unpaid Meal Period subclasses, Defendants argued DNI's meal and break policy exceeded "what is required by law" and that "nobody is allowed to work" during lunch and rest breaks.  For example, a DNI supervisor stated in a declaration that she kept an alarm "programmed" on her cell phone to alert her when breaks and lunch begin.  The supervisor further stated "no one is permitted to continue working" when lunch periods begin.  Thus, according to Defendants, resolving these claims required a "heavy, individualized analysis."

Defendants raised the same arguments concerning the Pre-and Post-Shift Unpaid Time and Time Shaving Policy subclasses.  Again, Defendants insisted DNI did not maintain a specific policy requiring employees to wait in line to punch in and out or one that "shav[ed]" time off employee shifts.

Finally, Defendants emphasized the late timing of Plaintiffs' motion.  The opposition asserted "Plaintiffs were presented with the data to support this motion in 2017 when they were provided timekeeping data and contact information for potential class members …."  Defendants claimed Plaintiffs "had several years" to conduct discovery but instead elected to "ambush" Defendants by filing the class certification motion three months before trial.  According to the opposition, "the failure to seek class certification for almost five years [] prevented" a proper defense to the class allegations.

*THE HEARING ON PLAINTIFFS' MOTION AND THE TRIAL COURT'S REQUEST FOR*

*FURTHER BRIEFING*

On June 8, 2020, the trial court issued the following tentative ruling on Plaintiffs' motion for class certification:[8]

> "The Court is inclined to grant the motion. However, the Court is gravely concerned that the five-year deadline to bring this matter to trial will expire in less than six months. The parties are to be prepared to address this issue as well as to argue this motion."

At the hearing, the court again raised the issue of the approaching five-year deadline pursuant to Code of Civil Procedure section 583.310. It requested "some kind of update from counsel on what the plan is with regard" to the approaching deadline. Plaintiffs' counsel expressed his belief the action was ready to proceed to trial and Defendants' counsel again noted Plaintiffs "waited four and a half years" to move for class certification. Ultimately, the court ordered the parties to submit further briefing on to what extent Judicial Council emergency rule 10(b) (emergency rule 10(b)), effective April 6, 2020, extended the five-year period for Plaintiffs to bring the matter to trial. The court took the class certification motion under submission.

In response to the request for further briefing, Plaintiffs argued the deadline to bring the matter to trial was extended to March 20, 2021, by virtue of emergency rule 10(b) and the parties' previous stipulation to extend the five-year statutory deadline. Defendants, on the other hand, argued emergency rule 10(b) abrogated the parties' previous stipulation and consequently set October 2020 as the deadline to try the case. At a subsequent hearing, the trial court determined December 21, 2020, constituted the five-year deadline.

---

[8] The record indicates Plaintiffs filed their reply brief on March 11, 2020, that largely repeated the arguments raised in their motion. In addition, Defendants filed a surrebuttal.

*THE ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION*

Subsequently, on June 23, 2020, the trial court denied Plaintiffs' motion. The written order explains:

"This matter was filed on April 22, 2015, and designated as complex on August 13, 2015. The parties were at issue on the pleadings by the end of 2015. Plaintiffs were provided with timekeeping data and contact information for potential class members in 2017.

"But it was not until December 12, 2019—more than 4-1/2 years later— that Plaintiff[s] moved to certify the class. California Rules of Court, Rule 3.764 (b) provides that a motion to certify should be filed 'when practicable'; Plaintiff has failed to meet this standard.

"Prompt and early determination of the class is essential. (*Danzig v. Jack Grynberg & Assoc[iate]s.* (1984) 161 Cal.App.3d 1128, 1136; *Home Sav[.] & Loan Assn. v. Superior Court* (1974) 42[] Cal.App.3d 1006, 1010.) Plaintiffs have offered no explanation or excuse for why this motion was filed so late, when they were provided with timekeeping data and contact information for potential class members in 2017.

"The delay in seeking certification has made it almost impossible for Defendants to complete class discovery before trial must be held in order to comply with the five[-]year deadline of Code of Civil Procedure section 583.310. *See Massey v. Bank of America* (1976) 56 Cal.App.3d 29, 33, holding that a trial court properly dismissed a class action thirty-four days prior to the expiration of the five[-]year statute because it did not allow enough time to provide notice to the class. As it is, the motion was filed only three months before trial was set, a date that was vacated only because Defendants stipulated to extending the [Code of Civil Procedure] section 538.310 date for 150 days. No trial date is presently set due to the coronavirus epidemic, but that does not excuse Plaintiffs['] dilatory approach to this litigation; nor does it solve the problems arising from the upcoming expiration of the five-year statute. Sufficient time must be provided for notice to potential class members and to allow for discovery. In short, Plaintiff[s] ha[ve] waited too long to seek class certification."

The record indicates Plaintiffs did not receive notice of the trial court's order until August 19, 2020. Plaintiffs applied ex parte for "proper service" of the order denying

9.

class certification. A minute order indicates the court directed the clerk to serve the order denying certification by mail on September 4, 2020.

Plaintiffs filed their notice of appeal on September 17, 2020. The notice states, "Plaintiffs appeal 'death knell' order denying class certification," and "[a]lternatively, Plaintiffs request the Court treat this appeal as a petition for writ review."

*POST-ORDER PROCEEDINGS*

On October 13, 2020, Plaintiffs filed their motion to stay the action pending outcome of the appeal. Defendants opposed the motion, in part because the order denying class certification was not appealable because of the pending PAGA claim. The parties litigated this issue at the hearing to stay the proceedings. The trial court granted Plaintiffs' motion to stay on October 29, 2020.

## DISCUSSION

Plaintiffs are aware there is a question as to the appealability of this order. They discussed this issue in the trial court and their notice of appeal mentions the death knell doctrine. However, for whatever reason, Plaintiffs omit any discussion of the doctrine in their opening brief and simply state, "The trial court's order denying Plaintiffs' class certification motion is appealable."

Defendants, on the other hand, argue this order is not appealable because Plaintiffs maintain a PAGA claim in the trial court. In the last portion of their reply brief, Plaintiffs claim the order is appealable because "[t]he 'incentive' to pursue PAGA claims … is significantly minimized" in this action. We agree with Defendants.

Interlocutory orders are generally not appealable under the " 'one final judgment' " rule. (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 754 (*Baycol*).) However, in *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, the California Supreme Court applied the death knell doctrine to an order sustaining a demurrer without leave to amend, in part, because plaintiffs could not maintain a class action. (*Baycol*, at p. 757

10.

[discussing *Daar*].)  The high court deemed the matter appealable because "the total substance of the order" "virtually demolished the action as a class action."  (*Daar*, at p. 699.)

In *Baycol*, the high court described the death knell doctrine as " 'a tightly defined and narrow concept.' "  (*Baycol*, *supra*, 51 Cal.4th at p. 760.)  Thus, in the context of class actions, "orders that only limit the scope of a class or the number of claims available to it are not similarly tantamount to dismissal and do not quality for immediate appeal under the death knell doctrine; only an order that entirely terminates class claims is appealable."  (*Id*. at pp. 757–758.)  "The rationale for the death knell doctrine is that these rulings amount to final judgments as to the class claims and would be 'effectively immunized … from appellate review' if no immediate appeal were permitted."  (*Williams v. Impax Laboratories, Inc.* (2019) 41 Cal.App.5th 1060, 1067, quoting *Baycol*, at pp. 757–758.)

Accordingly, the doctrine applies to an order "that (1) amounts to a de facto final judgment for absent plaintiffs, under circumstances where (2) the persistence of viable but perhaps de minimis individual plaintiff claims creates a risk" a final judgment will not be entered.  (*Baycol*, *supra*, 51 Cal.4th at p. 759.)

In *Munoz*, the Second Appellate District held the death knell doctrine did not apply to an order denying class certification where a PAGA claim remained in the trial court.  (*Munoz*, *supra*, 238 Cal.App.4th at p. 294.)  There, the plaintiffs filed a class action complaint stating several causes of action arising from Labor Code violations in addition to a PAGA claim.  (*Munoz*, at pp. 295–296.)  The plaintiffs moved for class certification and the defendant concurrently filed a motion to deny class certification and to strike the class allegations.  (*Id*. at p. 300.)  The trial court denied the plaintiffs' motion, granted the defendant's motion to deny class certification, and the plaintiffs subsequently appealed.  (*Id*. at pp. 302, 307.)

11.

Resolving an issue of first impression, the Second Appellate District turned to *Baycol*, *Daar v. Yellow Cab Co.*, *supra*, 67 Cal.2d 695, and *Haro v. City of Rosemead* (2009) 174 Cal.App.4th 1067 in concluding "the presence of PAGA claims following a trial court's denial of class certification precludes application of the death knell doctrine." (*Munoz*, *supra*, 238 Cal.App.4th at p. 310.) In *Haro*, the Second Appellate District determined the death knell doctrine did not apply to an order denying class certification brought under the Fair Labor Standards Act of 1938 (29 U.S.C. § 201 et seq.). (*Munoz*, at pp. 308–309 [discussing *Haro*].) Against this backdrop, *Munoz* explained:

> "Given the potential for recovery of significant civil penalties if the PAGA claims are successful, as well as attorney fees and costs, plaintiffs have ample financial incentive to pursue the remaining representative claims under the PAGA and, thereafter, pursue their appeal from the trial court's order denying class certification. Denial of class certification where the PAGA claims remain in the trial court would not have the 'legal effect' of a final judgment …." (*Munoz*, *supra*, 238 Cal.App.4th at p. 311.)

Accordingly, the Court of Appeal dismissed the appeal. (*Munoz*, *supra*, 238 Cal.App.4th at p. 312.)

Following *Munoz*, the Court of Appeal consistently holds the death knell doctrine does not apply where a PAGA claim remains pending in the trial court. (See, e.g., *Cortez v. Doty Bros. Equipment Co.*, *supra*, 15 Cal.App.5th at p. 9 ["We … hold the death knell exception to the one final judgment rule does not apply when a PAGA claim remains pending in the trial court following termination of the class claims."]; *Young v. RemX, Inc.* (2016) 2 Cal.App.5th 630, 633, 635 [trial court's order compelling arbitration on individual claims and dismissing class claims not appealable under the death knell doctrine because "the order does not appear to constitute a de facto final judgment … because their PAGA claims remain pending"]; *Nguyen v. Applied Medical Resources*

*Corp.* (2016) 4 Cal.App.5th 232, 243–244 [rejecting the plaintiff's argument that *Munoz* was " 'wrongly decided' " and deeming order compelling arbitration nonappealable].)[9]

We agree the death knell doctrine does not permit Plaintiffs to appeal the trial court's order denying class certification. Plaintiffs have asserted a representative PAGA claim in the FAC. The cause of action remains pending in the trial court. Indeed, in their motion to stay proceedings, Plaintiffs confirmed they brought both a class action and a "representative action" pursuant to PAGA.

Plaintiffs claim the California Supreme Court's opinion in *ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175 (*ZB, N.A.*) renders "[t]he underlying rationale in *Munoz* [] null and void" and warrants application of the death knell doctrine here.

In *ZB, N.A.*, the high court concluded the civil penalties a PAGA plaintiff may seek under Labor Code section 558[10] does not include unpaid wages. (*ZB*, *N.A.*, *supra*, 8 Cal.5th at p. 182.) Said differently, the unpaid wages the Labor Commissioner may

---

**9** By contrast, in *Miranda v. Anderson Enterprises, Inc.* (2015) 241 Cal.App.4th 196, the First Appellate District concluded the death knell doctrine applied to an appeal from an order compelling appellant to arbitrate individual claims and dismissing the representative PAGA claim. (*Miranda*, at p. 199.) In so holding, the Court of Appeal observed "*Munoz*'s analysis of a representative PAGA claim for purposes of the death knell doctrine supports our conclusion that the death knell doctrine applies equally to such claims." (*Id*. at p. 202.)

**10** Labor Code section 558 states, in relevant part:

"(a) Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:

"(1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

"(2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages." (Lab. Code, § 558, subd. (a)(1), (2).)

13.

recover pursuant to section 558 are "separate from and additional to, rather than thoroughly included within, the civil penalty a private plaintiff may recover in a PAGA action." (*ZB*, *N.A.*, at p. 195.)

We disagree *ZB, N.A.* "undermine[s]" the case law discussed above and renders this order appealable. The Supreme Court is clear that "only an order that entirely terminates class claims is appealable" under the death knell doctrine. (*Baycol*, *supra*, 51 Cal.4th at p. 758.) *ZB, N.A.*'s holding has the practical equivalent of limiting the recovery available through a PAGA action but does not terminate the representative claim. Plaintiffs may still seek civil penalties through their PAGA claim. Indeed, in support of their motion for class certification, Plaintiffs' attorney stated under penalty of perjury that Plaintiffs' "claims to PAGA penalties will be adjudicated before this Court whether or not a class is certified." Therefore, the trial court's denial of class certification does not have the legal effect of a final judgment because of Plaintiffs' stated intention to litigate the PAGA claim irrespective of the outcome of the class certification motion. (*Munoz*, *supra*, 238 Cal.App.4th at p. 311.)

We recognize we may treat an appeal from a nonappealable order as a petition for writ of mandate under "unusual circumstances." (*Olson v. Cory* (1983) 35 Cal.3d 390, 401; see also *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 744–745.) This may be appropriate, for example, where " 'the record sufficiently demonstrates the lack of adequate remedy at law necessary for issuance of the writ.' " (*Katzenstein v. Chabad of Poway* (2015) 237 Cal.App.4th 759, 770.)

There are no unusual circumstances justifying treating this appeal as a writ. (See *Munoz*, *supra*, 238 Cal.App.4th at p. 312.) While Plaintiffs' notice of appeal requests this alternative relief, neither their opening brief nor their reply brief discusses treating this matter as a writ petition and we decline to exercise our discretion to do so here.

In sum, we conclude Plaintiffs do not appeal from an appealable order because an order denying class certification does not fall within the scope of the death knell doctrine where, as here, a PAGA claim remains pending in the trial court.

**DISPOSITION**

Plaintiffs' appeal from the trial court's June 23, 2020 order denying their motion for class certification is dismissed. We express no opinion on the merits of Plaintiffs' appeal. Defendants shall recover their costs.


HILL, P. J.

WE CONCUR:


FRANSON, J.


PEÑA, J.

15.