Filed 8/8/25  Cancio v. A-C Electric Company CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ANTHONY CANCIO,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>A-C ELECTRIC COMPANY,<br><br>    Defendant and Appellant. | F088530<br><br>(Super. Ct. No. BCV-23-103407)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Kern County.  Thomas S. Clark, Judge.

Belden Blaine Raytis, T. Scott Belden, Tyler D. Anthony and Misty B. Franklin for Defendant and Appellant.

Blackstone Law, Miriam L. Schimmel, Joana Fang and Jared Osborne for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

This case concerns enforceability of an arbitration agreement between appellant and defendant A-C Electric Company and respondent and plaintiff Anthony Cancio.[1] Respondent is party to two collective bargaining agreements (CBAs) that apply to his work for appellant. Because the law requires that any agreement to waive a judicial forum for statutory claims must be "clear and unmistakable," we interpret the arbitration provisions contained in these CBAs strictly. Doing so, we conclude the arbitration provisions do not clearly and unmistakably waive the right to a judicial forum for the statutory claims at issue in this case. Accordingly, we affirm the trial court's order denying the motion to compel arbitration.

## BACKGROUND

Respondent was employed by appellant for approximately five months, working in delivery and as a general laborer. In October 2023, respondent and co-plaintiff Karri Ruenzel brought a putative class action complaint alleging violations of numerous Labor Code sections for failure to pay minimum wages, overtime, and meal and rest periods, as well as the failure to provide accurate wage statements, timely pay wages, and reimburse necessary business expenses. Appellant moved to compel arbitration in May 2024 on the basis of purported grievance and arbitration procedures contained in two CBAs, referred to as the "Inside Wireman's Agreement" (IWA) and "Project Labor Agreement" (PLA). The trial court concluded the claims in the complaint were brought under the Labor Code, not under either the IWA or PLA, and neither the IWA nor PLA contained an explicit waiver of the right to litigate statutory claims in a judicial forum sufficient to compel

---

[1] Another plaintiff, Karri Ruenzel, is listed as a respondent in the briefing here. While Ruenzel is a plaintiff in the matter pending in the trial court, appellant never sought to compel her to arbitrate any claims. It does not appear from the briefing that any party believes there is an applicable arbitration agreement applying to Ruenzel. Therefore, while two respondents are listed on the briefing, we will refer solely to a "respondent" here, since this appeal concerns only Cancio.

arbitration. Additionally, the trial court concluded the phrasing of the agreement, which said disputes "may" be submitted to arbitration, made "arbitration discretionary rather than mandatory."

## DISCUSSION

Because this case concerns the interpretation of a contract without resort to extrinsic evidence, we review de novo. (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395; *DVD Copy Control Assn., Inc. v. Kaleidescape, Inc.* (2009) 176 Cal.App.4th 697, 713; *Nava v. Mercury Casualty Co.* (2004) 118 Cal.App.4th 803, 805.) The trial court determined the statutory claims alleged in respondent's complaint were not brought under the PLA or IWA, and thus were not subject to the arbitration clause contained therein. Because the arbitration agreement did not contain a "clear and unmistakable" waiver of a judicial forum for those statutory claims, the motion to compel arbitration was denied.

The parties do not disagree about the legal standard applicable here. While contractual disputes under a CBA that contains an arbitration clause are presumed to be arbitrable, "the presumption of arbitration in a CBA does not apply to statutory violations." (*Cortez v. Doty Bros. Equipment Co.* (2017) 15 Cal.App.5th 1, 12; see *Wright v. Universal Maritime Service Corp.* (1998) 525 U.S. 70, 78–79; accord, *14 Penn Plaza LLC v. Pyett* (2009) 556 U.S. 247, 258 ["This Court has required only that an agreement to arbitrate statutory antidiscrimination claims be 'explicitly stated' in the collective-bargaining agreement."].) "Not only is [a plaintiff's] statutory claim not subject to a presumption of arbitrability; we think any CBA requirement to arbitrate it must be particularly clear." (*Wright*, at p. 79.) While the Supreme Court has held that a CBA may waive certain statutory rights on behalf of its members, "such a waiver must be clear and unmistakable." (*Id.* at p. 80.) "[W]e will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the

3.

undertaking is 'explicitly stated.'  More succinctly, the waiver must be clear and unmistakable." (*Metropolitan Edison Co. v. NLRB* (1983) 460 U.S. 693, 708.)

California courts have applied these holdings by looking to "the generality of the arbitration clause, explicit incorporation of statutory requirements, and the inclusion of specific contractual provisions." (*Vasserman v. Henry Mayo Newhall Memorial Hospital* (2017) 8 Cal.App.5th 236, 246 (*Vasserman*).)  "The test is whether a collective bargaining agreement makes compliance with the statute a contractual commitment subject to the arbitration clause." (*Vasquez v. Superior Court* (2000) 80 Cal.App.4th 430, 434 (*Vasquez*).)  Broad, general language is not sufficient. (*Id.* at p. 435.)  Instead, courts look to two different conditions to see whether the waiver of a judicial forum is sufficiently explicit.  First, we look to see if there is sufficiently clear language in an explicit arbitration provision. (*Ibid.*)  For this condition to be met, the CBA "must contain a clear and unmistakable provision under which the employees agree to submit to arbitration all [state and federal statutory] causes of action arising out of their employment." (*Ibid.*)  Second, we may find an agreement to arbitrate statutory claims if there is broad, nonspecific language in the arbitration clause, but it is combined elsewhere with an " 'explicit incorporation of statutory [] requirements' elsewhere in the contract." (*Ibid.*)  Thus, if another provision "makes it unmistakably clear that the [statutory claims] at issue are part of the agreement, employees will be bound to arbitrate their [state and federal statutory] claims." (*Ibid.*)  However, "[a] simple agreement not to engage in acts violative of a particular statute will not suffice; the agreement must establish the intent of the parties to incorporate 'in their entirety' " the statutory rights for which a judicial forum is purportedly waived. (*Ibid.*)  Put differently, "[c]ompliance with *a particular statute* must be an express contractual commitment in the collective bargaining agreement." (*Ibid.*, italics added.)

No party contends the arbitration provisions contain a clear and explicit agreement to arbitrate all statutory claims.  The IWA contains very general language, stating in

4.

section 1.8 that "[a]ny dispute or grievance that cannot be solved between the parties may be submitted to arbitration."  This provision contains no express references to any statutory claims that are intended to be arbitrated.  Thus, it is clear there is no "clear and unmistakable" language waiving the right to bring statutory claims in a judicial forum in the arbitration clause itself.

Instead, appellant suggests the explicit language needed is found at sections 7.9 through 7.11 of the PLA, a separate agreement that the parties agree applied to their work.  These sections are replicated in their entirety here:

> "7.9    Compensation for travel time, if any, will be governed exclusively by the applicable Master Agreement(s).  Disputes concerning travel time shall be resolved pursuant to Article 8.

> "7.10  Employers shall provide their respective employees with all rest breaks as required by California law.  Employees who are not authorized or permitted to take all of their required rest breaks shall be entitled to receive an extra hour's pay as compensation for each workday in which a rest break was not provided.  The intent of this provision is to ensure that violations of an employee's right to receive rest breaks under state law are grievable under this Agreement and/or applicable Master Agreement(s) and to ensure that the exemptions contained in Sections 11(D) and (E) of California Industrial Wage Order 16 apply to the work performed on the Project.[2]

---

**2**    Wage Order 16, section 11 states, in pertinent part:

"(A)  Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable, shall be in the middle of each work period.  Nothing in this provision shall prevent an employer from staggering rest periods to avoid interruption in the flow of work and to maintain continuous operations, or from scheduling rest periods to coincide with breaks in the flow of work that occur in the course of the workday.  The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time for every four (4) hours worked, or major fraction thereof.  Rest periods shall take place at employer designated areas, which may include or be limited to the employees immediate work area.  [¶] … [¶]

"(D)  If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest

5.

"7.11   Employers shall provide their respective employees with all meal periods as required by California law.  Employees who are not authorized or permitted to take all of their required meal periods shall be entitled to receive an extra hour's pay as compensation for each workday in which a meal period was not provided.  The intent of this provision is to ensure that violations of an employee's right to receive meal periods under state law are grievable under this Agreement and/or applicable Master Agreement(s) and to ensure that the exemption for workers employed in construction occupations contained in Section 512(e) of the California Labor Code[3] applies to the work performed on this Project."

These provisions do not provide sufficiently explicit language to conclude that all rights to invoke a judicial forum for meal and rest break claims have been waived.  First,

---

period is not provided.  In cases where a valid collective bargaining agreement provides final and binding mechanism for resolving disputes regarding enforcement of the rest period provisions, the collective bargaining agreement will prevail.

"(E)  This section shall not apply to any employee covered by a valid collective bargaining agreement if the collective bargaining agreement provides equivalent protection."

[3]     Section 512 of the Labor Code states, in pertinent part:

"(a)  An employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee.  An employer shall not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.  [¶] … [¶]

"(e)  Subdivisions (a) and (b) do not apply to an employee specified in subdivision (f) if both of the following conditions are satisfied:

"(1)  The employee is covered by a valid collective bargaining agreement.

"(2)  The valid collective bargaining agreement expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate."

these sections do not purport to incorporate "in their entirety" all statutory protections for meal and rest breaks.[4]  (See *Vasquez*, *supra*, 80 Cal.App.4th at p. 434.)  They do not cite specific code sections which, for any claims brought under those sections, arbitration will be mandatory.  As was reaffirmed in both *Vasquez* and *Vasserman*, it is insufficient for a CBA to state that the employer will follow the law or will not engage in acts that violate a statute.  Rather, "[c]ompliance with *a particular statute* must be an express contractual commitment in the collective bargaining agreement."  (*Vasquez*, at p. 435, italics added; see *id.* at p. 436 ["there is a contractual commitment not to discriminate on the basis of national origin, but there is no express provision that the antidiscrimination commitment is subject to the grievance and arbitration provisions"]; *Vasserman*, *supra*, 8 Cal.App.5th at p. 250 [noting the employer "agree[d] to pay penalties required by the Labor Code, but it does not make compliance with the Labor Code an express contractual commitment"].)  There is nothing in sections 7.10 or 7.11 that says a violation of any particular Labor Code shall be submitted to mandatory arbitration, nor that the agreement incorporates the requirement of any particular statute.

Instead, the language of sections 7.10 and 7.11 states it is the intent of these sections to make certain violations "grievable" under "this Agreement and/or applicable Master Agreement(s)."  This choice of adjective—that the violations are "grievable"—is somewhat odd.  "Grievable" is not a word commonly used in English, and no relevant definition is found in either Merriam-Webster Dictionary or the Oxford English Dictionary.[5]  The PLA itself contains no definition of the word.  Neither party points us to

---

[4]     Section 7.9, concerning travel time, defers entirely to other agreements and provisions and does not contain any statutory references, and thus clearly does not meet the standard.  We do not consider it further here.

[5]     The Oxford English Dictionary indicates there is an obsolete version of the word meaning "causing grief or pain," which is obviously not the intended use within the context of the PLA.  (Oxford English Dictionary,

7.

anywhere in the record containing extrinsic evidence showing what this word is intended to mean. Thus, we rely on the construction of this word, via comparison to other similarly-constructed words,[6] to conclude the meaning of "grievable" is merely a complaint "able to be or capable of being grieved." This open-ended definition—that a violation which is "grievable" is simply one which can be grieved—makes good sense, considering the fact that the language of the PLA needed to interact with multiple other documents. The PLA clearly was not designed in relation to the IWA in particular, but rather with potentially numerous "applicable Master Agreement(s)." Presumably, these "Master Agreement(s)" might contain varied arbitration, mediation, and/or grievance procedures, based on negotiations separate and apart from those involving the PLA. Using open-ended language better allows the PLA to interact with multiple other documents, the terms of which might vary widely. Thus, we interpret the language of the PLA to say a violation which is "grievable" is a violation which is merely capable of being submitted to grievance provisions found elsewhere, either in the PLA itself or other master agreements that might apply.[7]

However, saying a violation *can* be submitted to an alternative dispute resolution process is a far cry from saying it *must* be arbitrated. Nothing in the PLA states that a

---

<https://www.oed.com/search/dictionary/?scope=Entries&q=grievable> [as of Aug. 8, 2025].)

[6]    For instance, the word "believable" means "capable of being believed especially as within the range of known possibility or probability." (Merriam-Webster.com, <https://www.merriam-webster.com/dictionary/believable> [as of Aug. 8, 2025].) "Knowable" means "capable of being known: able to be determined or understood." (Merriam-Webster.com, <https://www.merriam-webster.com/dictionary/knowable> [as of Aug. 8, 2025].)

[7]    Appellant conceded during oral argument that this was one potential reading of the subject language. As other courts have noted that where the operative language is "susceptible of a permissive meaning," it will not be construed as sufficiently explicit and unmistakable so as to constitute a waiver of access to the courts for statutory claims. (*Volpei v. County of Ventura* (2013) 221 Cal.App.4th 391, 396.)

violation of section 7.10 or 7.11 is subject to mandatory arbitration. Rather, the clear meaning of the phrase is that certain alleged violations are *capable* of being subjected to some sort of grievance process, which might be found either in that document or other documents. We cannot infer from this general statement that the PLA "clearly and unmistakably" waives all employees' rights to a judicial forum for statutory meal and rest break claims, merely because it says that such types of violations *can* be submitted to alternative dispute resolution provisions found in the PLA or other various, unidentified agreements.

Our conclusion that no clear and unmistakable waiver exists is further reinforced by language in the PLA that makes clear the arbitration of disputes is limited to questions arising under the agreement, not to statutory claims brought under the Labor Code. Section 8.1 states the parties agree "any question *arising out of and during the term of this Agreement involving its interpretation and application* … shall be considered a grievance." (Italics added.) This language again contains no citations to Labor Code sections, and does not state that all statutory claims arising under any particular statutes will be subject to mandatory arbitration. Rather, it states in broad and general language that questions arising *from the agreement* will be subject to a grievance procedure, which ultimately culminates in arbitration. Of course, respondent's claims here were not brought under the PLA or IWA, but rather under Labor Code sections 201, 202, 203, 204, 210, 226, subdivision (a), 226.7, 510, 512, subdivision (a), 1194, 1197, 1197.1, 1198, 2800, and 2802. None of these code sections are referenced in section 8 of the PLA. Only one related code section—Labor Code section 512, subdivision (e)—is referenced at all in section 7 of the PLA, and that section states only that such claims are able to be grieved, not that they must be arbitrated.

*Cortez* does not dictate a different outcome. In *Cortez*, the employee conceded the agreement clearly and unmistakably stated all claims "arising under" Wage Order 16 would be arbitrated. (*Cortez v. Doty Bros. Equipment Co.*, *supra*, 15 Cal.App.5th at

9.

p. 14.)  Even to the extent *Cortez* can be cited as authority for one court's willingness to endorse less explicit waivers of the right to litigate statutory claims in CBAs, this is far from the prevailing view amongst California courts.  (See *Vasserman*, *supra*, 8 Cal.App.5th at pp. 247–248 [finding there was no " ' "explicit incorporation of statutory requirements" ' " where the relevant provisions merely "mirror[ed] the requirements" of a Labor Code section, but did not expressly reference the Labor Code section]; *Mendez v. Mid-Wilshire Health Care Center* (2013) 220 Cal.App.4th 534, 545 [concluding language stating " '[t]he employer agrees to abide by applicable Federal and State laws and regulations and local ordinances' " was not sufficiently explicit to require arbitration of statutory discrimination claims]; *Vasquez*, *supra*, 80 Cal.App.4th at pp. 433, 436 [noting that the ADA and the FEHA, under which the relevant claims were brought, were not "explicitly incorporated in the CBA," even though the CBA stated there " 'shall be no discrimination by … the Employer of any kind against any … employee on account of race, color, religion, sex, age or national origin' "].)  The statutory claims to be arbitrated must be explicitly listed in the agreement.  We see no real difficulty with explicitly referencing statutory claims in an arbitration agreement, if this is what the parties intend to arbitrate.

From the above, it is clear neither the language of the IWA nor the PLA "clearly and unmistakably" waives respondent's right to a judicial forum for his statutory labor claims.  We do not presume an agreement to arbitrate disputes arising under a contract also includes an agreement to arbitrate all statutory claims which might relate to that contract when the contract does not clearly and unmistakably say so.  This is particularly true in light of recent guidance from both the United States and California Supreme Courts that the law contains no preference for arbitration, and such agreements are merely to be enforced as any other contract would be enforced.  (See *Morgan v. Sundance, Inc.* (2022) 596 U.S. 411, 418 ["The policy is to make 'arbitration agreements as enforceable as other contracts, but not more so.' "]; *Quach v. California Commerce*

*Club, Inc.* (2024) 16 Cal.5th 562, 578 [finding California law "should be interpreted to require a court to 'hold a party to its arbitration contract just as the court would to any other kind,' not to authorize a court to 'devise novel rules to favor arbitration over litigation.' "].)

Because we conclude there is not sufficiently clear and unmistakable language to require arbitration of respondent's statutory claims under the Labor Code, we do not reach the issue of whether the trial court was correct that the IWA and PLA provide only for voluntary, not mandatory, arbitration.

## DISPOSITION

The trial court's order denying the motion to compel arbitration is affirmed. Respondent shall recover his costs on appeal.

                                         DE SANTOS, J.

WE CONCUR:

DETJEN, Acting P. J.

SNAUFFER, J.

11.